**FLEMING FOODS OF TEXAS, INC., Appellant,**

**v.**

**John SHARP, Comptroller of Public Accounts of the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellees.**

No. 03–96–00477–CV.

Court of Appeals of Texas, Austin.

Aug. 28, 1997.

Rehearing Overruled Sept. 25, 1997.

J. Scott Morris, Austin, for Appellant.

Dan Morales, Attorney General, Esteban H. Rodriguez, Assistant Attorney General, Taxation Division, Austin, for Appellees.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

ABOUSSIE, Justice.

Appellant Fleming Foods, Inc. ("Fleming") appeals from a trial court judgment construing sections 111.104 and 111.203 of the Texas Tax Code and awarding judgment in favor of appellees John Sharp, Comptroller of Public Accounts of the State of Texas, and Dan Morales, Attorney General of the State of Texas (collectively the "Comptroller"). *See* Tex. Tax Code Ann. §§ 111.104 & 111.203 (West 1992) ("Code"). In four points of error, Fleming argues that the trial court erred by disallowing expert testimony regarding

the language of sections 111.104 and 111.203 of the Code; by incorrectly interpreting section 111.104 of the Code; and by holding that Fleming was not entitled to relief under the doctrine of detrimental reliance. We will affirm the trial court's judgment.

## BACKGROUND

Fleming, a wholesale grocer, was audited by the Comptroller for sales and use taxes for the period from July 1, 1985, through March 31, 1989. Following a deficiency assessment, Fleming requested a redetermination hearing. Before the redetermination hearing, Fleming sought and obtained assignments of refund rights from vendors to whom it had paid sales taxes. Fleming filed for a refund under section 111.104 of the Code on April 1, 1992, at which time it provided the Comptroller with assignments of refund rights from several vendors.[1] On April 3, 1993, Fleming provided the Comptroller with a second group of assignments,[2] and on June 18, 1993, it provided a third group of assignments.[3] During this same period prior to the hearing, Fleming and the Comptroller entered into a series of nine waivers of the statute of limitations, extending the period for Fleming to file for a refund under section 111.203 of the Code. None of the vendors entered into waiver agreements with the Comptroller. After the redetermination hearing, the Comptroller granted refunds to Fleming on some of the claims but denied others, claiming they were barred by the statute of limitations because the vendors had not entered into waiver agreements.

Fleming sued the Comptroller in district court, seeking a refund of sales and use taxes in the amount of $114,434.36 that Fleming paid, under protest, after the redetermination hearing. Following a bench trial, the court made conclusions of law and rendered a take-nothing judgment against Fleming; Fleming appeals.

## DISCUSSION

■ In its first point of error, Fleming argues that the trial court erred by not allowing its expert witness, former Texas Attorney General Waggoner Carr, to testify on whether changes made to the Code were substantive changes and regarding the meaning and use of "generally" in the statutes. These issues concern the construction or interpretation of the tax statutes in question. Matters of statutory construction are questions of law for the court to decide rather than issues of fact. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989); *City of Austin v. Austin Professional Fire Fighters Ass'n*, 935 S.W.2d 179, 180 (Tex. App.—Austin 1996, no writ).

■ An expert may offer an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and based on proper legal concepts. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987). An expert witness may not, however, testify regarding an opinion on a pure question of law. *Holden v. Weidenfeller*, 929 S.W.2d 124, 133 (Tex. App.—San Antonio 1996, writ denied); *Schauer v. Memorial Care Sys.*, 856 S.W.2d 437, 451 (Tex.App.—Houston [1st Dist.] 1993, no writ). Because the issues on which Fleming sought to present General Carr's testimony were pure questions of law, the trial court did not err in disallowing General Carr's testimony. We overrule Fleming's first point of error.

In its second point of error, Fleming contends the trial court incorrectly interpreted

1. The assignments included with the April 1992 claim were from: Century Papers; Containers Service; Dallas Strapping; Dennison Manufacturing; G–P Plastics; Graham Magnetics; Carbonic Industries; Summers Pallet; Denny Business Form; Scott, Dick Photograph; Atlas Pallet; Commercial Pallet; Five J. Pallet; Professional Packaging; Ace Carton & Tape; Taylor, W.A.; and Johnson Equipment.

2. The assignments provided on April 3, 1993 were from: Data Documents; Trinity Woods; Wallace Computer; Complete Packaging; Master Electric Company; Comancho Box Company; and Main Factors.

3. The assignments provided on June 18, 1993 were from: Bancroft Paper; Bevco Industries; Lydick Roofing; Fire Systems of Houston; Graphic Technology; McKenzie & Cross, Inc.; Horizon Systems; Pack–Mark Shipping; and Quality Pallets.

sections 111.104 and 111.203 of the Code by applying incorrect statutory analysis.[4] The parties primarily dispute the interpretation of section 111.104. Specifically, Fleming argues that the plain language of section 111.104 provides standing to file a refund claim to any person who paid taxes and to that person's assignee, attorney, or successor. The Comptroller contends section 111.104 provides standing to a person who paid the tax *directly to the state* or obtained an assignment of refund rights from the person who paid the tax directly to the state.

■■■ The cardinal rule of statutory interpretation is to effectuate the intent of the legislature. *Union Bankers Ins. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994); *Austin Professional Fire Fighters Ass'n,* 935 S.W.2d at 180. We look to the entire act in determining the legislature's intent with respect to a specific provision. *Taylor v. Firemen's & Policemen's Civil Serv.,* 616 S.W.2d 187, 190 (Tex.1981); *Wilburn v. State,* 824 S.W.2d 755, 760 (Tex.App.—Austin 1992, no writ).

In this case, the legislative intent is expressly stated in the Act: "This Act is intended as a recodification only, and no substantive change in the law is intended by this Act." Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 40, 1981 Tex. Gen. Laws 1490, 1787. Furthermore, the 1981 recodification of the Code was under the authority of the 1963 statutory revision program which expressly provides that the sense, meaning, or effect of any legislative act shall not be altered. Act of May 21, 1963, 58th Leg., R.S., ch. 448, § 1, 1963 Tex. Gen. Laws 1152. The legislature, therefore, clearly intended that

section 111.104 be substantively the same as its predecessor, article 1.11A of the Texas Revised Civil Statutes. Tex.Rev.Civ. Stat. Ann. art. 1.11A, since repealed and codified at Code § 111.104 (West 1992) (hereinafter "former article 1.11A").

While section 111.104 is clear and unambiguous on its face, the variation in its wording during codification in conjunction with the legislature's express intent that no substantive changes be made during the codification create some uncertainty regarding the statute's interpretation. The doctrine of legislative acceptance, therefore, applies. *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 248 (Tex.1991).

Before the 1981 codification, former article 1.11A had been interpreted by the Comptroller in 34 Texas Administrative Code Rule 3.325. The Comptroller's own interpretation provides standing to file for a refund of taxes to (1) persons who paid the tax directly to the state and (2) persons who obtain an assignment of refund rights from a party who paid the taxes directly to the state. 34 Tex. Admin. Code § 3.325 (1997).

■■■ An administrative officer's construction of statutory language is entitled to great weight in the interpretation of the statute in cases in which the construction has continued for a long time. *Bullock v. Marathon Oil Co.,* 798 S.W.2d 353, 357 (Tex. App.—Austin 1990, no writ). And, if an agency interpretation is in effect at the time the legislature amends the law without making any substantial change in the statute, the legislature is deemed to have accepted the

---

**4.** Specifically, Fleming challenges the trial court's second conclusion of law:

Plaintiff's claim depends entirely upon plaintiff's contention that, by the 1981 recodification of the Texas Tax Code the legislature made a substantive change in the meaning of Tax Code Sec. 111.104, and for the following reasons that contention is groundless, as that word is used in Civil Procedure Rule 13.

(a) Sec. 101.001 of the Tax Code states the purpose of Title 2, State Taxation, and provides that Title 2 was "enacted as a part of the state's continuing statutory revision program, begun by the Texas Legislative Council in 1963 as directed by the legislature in Chapter 448, Acts of the 58th Legislature, 1963 (Article 5429b–1, Vernon's Texas Civil Statutes),

(which) contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change". [sic]

(b) The first paragraph of the enactment of said 1963 statutory revision program states that in carrying out the revision program, the sense, meaning, or effect of any legislative act shall not be altered. Acts of 58th Legislature, Regular Session, 1963, Chapter 448, page 1152.

(c) Sec. 40 of the 1981 Tax Code recodification (Acts of 67th Legislature, Regular Session, 1981, Chapter 389, page 1787) provided: "This Act is intended as a recodification only, and no substantive change in the law is intended by this Act."

agency's interpretation. *Humble Oil & Refining Co. v. Calvert,* 414 S.W.2d 172, 180 (Tex.1967); *Federal Crude Oil Co. v. Yount–Lee Oil Co.,* 122 Tex. 21, 52 S.W.2d 56, 62 (1932); *Marathon Oil Co.,* 798 S.W.2d at 357.

The legislature amended portions of former article 1.11A multiple times between the time of its enactment and the 1981 codification, including amendments during the 1981 legislative session prior to the codification.[5] Since the enactment of former article 1.11A, the Comptroller's interpretation regarding standing to file a refund has remained the same. The legislature's decision not to change the law with respect to standing to file refund claims, despite these many amendments over the years, indicates legislative acceptance of the Comptroller's interpretation. *See Humble Oil & Refining Co.,* 414 S.W.2d at 180. Additionally, when the legislature codifies a statute without substantive change, it is presumed the legislature knew and adopted the interpretation placed on the original statute and intended the new code provision to receive the same construction. *Cf. Coastal Indus. Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.,* 563 S.W.2d 916, 918 (Tex.1978) (when the legislature re-enacts a statute without substantive change, it is presumed the legislature adopted the interpretation placed on the original act); *Laidlaw Waste Sys., Inc. v. City of Wilmer,* 904 S.W.2d 656, 663 (Tex.1995) (Gonzales, J., dissenting) (quoting *Coastal Indus. Water Auth.,* 563 S.W.2d at 918). The legislature, therefore, did not substantively change the refund provisions when it recodified former article 1.11A as section 111.104. Section 111.104 provides standing to file for a refund to taxpayers who (1) pay the tax directly to the state, or (2) obtain a refund request and an assignment of refund rights from the taxpayer who paid the tax directly to the state. Code § 111.104(b), (f).

The State does not dispute that Fleming obtained assignments of refund rights from sellers to whom it paid taxes and who in turn paid the taxes directly to the state. In fact, the State refunded a portion of the taxes to Fleming through this very procedure. The key issue in this case regards the interpretation of section 111.203 and whether the assignors of the refund rights, rather than Fleming, were required to enter into extension agreements with the Comptroller. Section 111.203 of the Code provides, "Before the expiration of the periods prescribed in [section] 111.104 ... for the filing of a refund claim ... the comptroller and a taxpayer may agree in writing to the filing of a refund claim ... after that time." Code § 111.203(a). Fleming contends that a holding that section 111.104 applies to persons who pay taxes directly to the State or to that person's assignee renders section 111.203 meaningless. We disagree.

Section 111.203 provides for an extension agreement between the Comptroller and a *taxpayer. Id.* As Fleming contends, we must read the sections together and may not give one provision a meaning inconsistent with the other provisions. *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 437 (Tex.1972). Reading sections 111.104 and 111.203 together, the "taxpayer" in section 111.203 must be the same "taxpayer" in section 111.104. The taxpayer in section 111.104 is the taxpayer "from whom the tax was collected." Code § 111.104. The taxpayer in section 111.203 who may enter into an extension agreement with the Comptroller, therefore, must also be the taxpayer from whom the tax was collected or, stated another way, the person who paid the tax directly to the State. *See* Code § 111.203. Such an interpretation does not render section 111.203 meaningless; rather, it allows section 111.203 to be read together and consistently with section 111.104.

■ We hold the trial court did not err in its interpretation of sections 111.104 and 111.203. Additionally, although Fleming correctly obtained assignments of refund rights from its vendors, Fleming's refund requests were not timely filed because the vendors did not enter into extension agreements with the Comptroller. *See* Code §§ 111.104, .203. The trial court, therefore, did not err by

---

5. The 1981 amendments involved provisions in former article 1.11A which are not relevant to this cause. The legislature has also amended section 111.104 since the refund provision was codified.

rendering judgment against Fleming. We overrule Fleming's second point of error.

 In its third point of error, Fleming argues the trial court's interpretation of sections 111.104 and 111.203 was incorrect because the Code must be strictly construed against the Comptroller. We disagree. Provisions of the Code that impose taxes must be strictly construed against the taxing authority. *See, e.g., Bullock v. Statistical Tabulating Corp.,* 549 S.W.2d 166, 169 (Tex. 1977); *Citizens Nat'l Bank v. Calvert,* 527 S.W.2d 175, 180 (Tex.1975); *Sharp v. Direct Resources for Print, Inc.,* 910 S.W.2d 535, 538 (Tex.App.—Austin 1995, writ denied). Texas's tax policy also requires, however, that, unless the legislative intent is ambiguous, courts should resolve questions regarding tax *exemptions* in favor of the taxing authority. *See Bullock v. National Bancshares Corp.,* 584 S.W.2d 268, 272 (Tex.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980); *Gifford–Hill & Co., Inc. v. Wise County Appraisal Dist.,* 827 S.W.2d 811, 820 (Tex.1991) (Gonzales, J., dissenting). The tax provisions in this case involve neither taxing provisions nor tax exemptions; rather, they are procedural in nature. We, therefore, cannot say the trial court erred by refusing to strictly construe the provisions against the State. We overrule Fleming's third point of error.

In its fourth point of error, Fleming contends the trial court erred by not considering Fleming's claim that it was entitled to relief from the statute of limitations through the extension agreements under the doctrine of detrimental reliance and by basing its ruling against Fleming on theories of estoppel and lack of waiver of governmental immunity. We need not address the merits of Fleming's argument because Fleming has cited no authority in support of its position. We, therefore, hold it is without merit. *See* Tex. R.App. P. 74(f); *Hall v. Oklahoma Factors, Inc.,* 935 S.W.2d 504, 506 (Tex.App.—Waco 1996, no writ); *Parker v. Parker,* 897 S.W.2d 918, 926 (Tex.App.—Fort Worth 1995, writ denied).

## CONCLUSION

For the reasons stated in our opinion, we affirm the judgment of the trial court.