TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00435-CV







John Sharp, Comptroller of Public Accounts for the State of Texas; and Dan Morales,
Attorney General of the State of Texas, Appellants


v.



Park 'N Fly of Texas, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 95-12285, HONORABLE JERRY DELLANA, JUDGE PRESIDING 






 Park 'N Fly of Texas, Inc. ("PNF"), appellee, filed suit against John Sharp,
Comptroller of Public Accounts for the State of Texas, and Dan Morales, Attorney General of the
State of Texas, appellants (collectively the "Comptroller"), to recover taxes paid under protest. 
See Tex. Tax Code Ann. ("Tax Code") § 112.052 (West 1992). After a bench trial, the trial
court rendered judgment for PNF, granting declaratory relief and ordering the Comptroller to
refund more than half a million dollars plus interest and attorney's fees.

 On appeal, the Comptroller raises seven issues relating to three basic areas: 
(1) whether the Comptroller's construction of section 151.007 of the Tax Code is correct;
(2) whether that construction and the substantive administrative rule embodying it violate the
Texas or United States Constitutions; and (3) whether section 112.108 of the Tax Code prohibits
a taxpayer from obtaining relief under the Uniform Declaratory Judgments Act. We will reverse
the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

 PNF is a business that provides parking services to airport passengers who wish
to leave their cars near the airport. It operates parking lots near the Houston Intercontinental
Airport and the Dallas-Fort Worth International Airport. After customers have parked their cars
on PNF premises, a PNF shuttle bus takes them to the airport terminal four or five miles away. 
When they return from their trip, a PNF shuttle bus picks them up at the terminal and transports
them back to the PNF parking lot. PNF operates at least twenty shuttle buses continuously so
customers do not have to wait for a shuttle bus more than a few minutes when either arriving or
departing. Although the fee collected by PNF is based solely on the length of time customers
park, a sign at the parking-attendant booth states that about 70% of the fee goes to pay for
transportation while about 30% of the fee is actually allocated to the parking service. PNF
collected sales tax on the 30% portion only.

 In 1992, the Comptroller audited PNF for the period July 1, 1988 through April
30, 1992. During the audit, PNF was informed that the entire fee it was charging was taxable. 
However, the Comptroller forgave PNF's tax liability for the audit period. In October 1993, the
policy of taxing this type of shuttle service was addressed in Tax Policy News, a Comptroller
newsletter. In October 1994, the Comptroller gave notice to PNF and others of a proposed
amendment to the Comptroller's rules to clarify that the shuttle service component of off-site
airport parking charges would be taxable effective October 1993, the date of the Tax Policy News
article discussing the policy. See 34 Tex. Admin. Code § 3.315 (1994). The rule was adopted
and became effective in October 1995.

 PNF filed suit in a Travis County district court seeking a refund of sales tax paid
under protest for the period of August 1995 through January 1997. See Tax Code § 112.001. 
The trial court ordered a refund of $513,576.86 plus interest, and awarded PNF $68,000 in
attorney's fees. The trial court also granted declaratory relief in favor of PNF, declaring: (1)
PNF's shuttle service is not subject to taxation under the Tax Code; (2) the Comptroller's taxation
of the shuttle service violated PNF's right to equal protection under the United States Constitution
and PNF's right to equal and uniform taxation under the Texas Constitution; (3) the Comptroller's
substantive Rule 3.315, 34 Tex. Admin. Code § 3.315 (1997), is invalid because it violates the
Tax Code; and (4) Rule 3.315 is an unconstitutionally retroactive law under the Texas
Constitution.


DISCUSSION

 Appellants' first six issues concern the trial court's legal conclusions. A trial
court's conclusions of law are reviewed de novo. University of Tex. Law Sch. v. Texas Legal
Foundation, 958 S.W.2d 479, 481 (Tex. App.--Austin 1997, no pet.). The primary rule of
statutory construction is that a court must look to the intent of the legislature and must construe
the statute so as to give effect to that intent. Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278,
280 (Tex. 1994). The legislature has provided that, in construing a statute, whether or not it is
considered ambiguous on its face, a court may consider, among other things: the object sought
to be attained, circumstances of enactment, legislative history, common law or previous statutory
provisions, consequences of a particular construction, and administrative construction. See Tex.
Gov't Code Ann. § 311.023 (West 1988). Where ambiguities in construction of tax statutes
remain, courts strictly construe the applicability of taxation against the taxing authority and in the
taxpayer's favor. See Calvert v. Texas Pipe Line Co., 517 S.W.2d 777, 781 (Tex. 1974); Texas
Utils. Elec. Co. v. Sharp, 962 S.W.2d 723, 726 n.4 (Tex. App.--Austin 1998, no pet. h.).

 In his first issue, the Comptroller presents the following query: May an off-site
parking business that offers both parking and airport transportation for a single price refuse to
collect sales tax on the portion of the price it allocates to transportation? Under the circumstances
of the present case, we will answer in the negative.

 A tax is imposed on each sale of a "taxable item," with the amount of the tax being
based on the "sales price" of the item sold. Tax Code § 151.051. The term "taxable item"
includes taxable services. Id. § 151.010. Motor vehicle parking and storage services are
specifically listed as taxable services. Id. § 151.0101(4). Transportation, however, is not listed
as a taxable service. Id. § 151.0101. Nonetheless, when calculating the amount of sales tax owed
on a transaction that involves both a taxable service and transportation, the "sales price" is the
total amount for which a taxable item is sold, without a deduction for the cost of "transportation
incident to the performance of a taxable service." Id. § 151.007(a)(4). (1) Logically, this can only
mean that in such circumstances tax must be paid on the total sales price notwithstanding the fact
that transportation, which is not itself a taxable service, constitutes part of the overall item sold. 
PNF's parking service is a taxable service. Thus, if PNF's shuttle service is "incident to" its
parking service, the cost of the shuttle service (transportation) may not be deducted from the total
sales price.


Statutory Construction

 The trial court concluded that PNF was not deducting from the total amount
charged for its parking service any costs of transportation that were incident to the performance
of that taxable service. In other words, the court concluded that PNF's transportation service was
not incident to its parking service. PNF asserts first that the 70% allotted to transportation on the
sales price is a charge, not a cost. We are not persuaded by the charge-cost distinction. The Tax
Code does not define "cost," but its common definition includes the amount charged for
something. See Black's Law Dictionary 345 (6th ed. 1990); Webster's Third New International
Dictionary 515 (Philip B. Gove ed., 1986) ("charge" as a synonym of "cost"). PNF asserts that
its bills state two charges: 30% for parking (taxed) and 70% for transportation (untaxed), in
contrast to a bill that states a single charge of 100% for parking (taxed) and then deducts 70% for
transportation with no reduction in taxes paid. We believe allowing taxation of the 70% in the
one situation and not in the other would elevate form (whether the transportation allocation was
a "fee charged" or a "cost deducted") over substance (whether the transportation was incident to
the parking). We conclude that the operative question should be the substantive one. Whether
PNF terms the portion of the price allocated to transportation a "cost" or a "charge" is not
controlling.

 PNF also asserts that the shuttle service is not "incident to" the parking service
because the shuttle service is the major part of the operating costs and thus is so essential that it
cannot be considered a minor accompaniment to PNF's parking service. PNF's argument treats
Tax Code section 151.007(a)(4) as if it used the phrase "incidental to" rather than "incident to." 
A leading authority on legal usage has specifically addressed the distinction between the two
phrases:


incident to; incidental to. Though to some extent interchangeable historically,
these phrases have undergone a plain differentiation that has gained acceptance
among stylists. The former ["incident to"] means "closely related to; naturally
appearing with"; the latter ["incidental to"], "happening by chance and subordinate
to some other thing; peripheral." In the following sentence, incident is properly
used: "In an action for fraud, exemplary damages are incident to and dependent
on the recovery of actual damages." Here incidental is correctly used: "It is clear
that testator's plan of accumulation was merely incidental to his primary charitable
intention to create a source that would provide continuing income over the 400-year term for the maintenance of Masonic homes."



Bryan A. Garner, A Dictionary of Modern Legal Usage 430 (2d ed. 1995).

 We are persuaded that the two words are not interchangeable here, and that the
essence of "incident to," as used in Tax Code § 151.007(a)(4), is "closely related to." (2) In the
present case, the shuttle service occurs with and is naturally related to the parking service because
customers would otherwise have to carry their luggage and walk the distance to the terminal. We
are convinced that PNF's shuttle service is incident to its parking service.

 This conclusion is bolstered by considering the totality of the circumstances. In
evaluating the relation between transportation and the taxable service, we look at the whole of the
circumstances. See Gifford-Hill and Co., Inc. v. State, 442 S.W.2d 320, 323 (Tex. 1969). 
Therefore, we look to the entire transaction to determine whether the shuttle service is incident
to the parking service or if it is a stand-alone service. PNF's brochures and other marketing
materials present PNF as a parking service that provides other services free to make each
customer's trip a little easier: complimentary newspaper, continuous free shuttle service to and
from the terminals, twenty-four-hour security, courteous employees, and no walking or waiting. 
PNF's shuttles provide service only between its lots and the terminals. The customer pays one
rate based on the length of the parking stay regardless of whether the shuttle service is used, and
there is no evidence in the record that any customer has ever forgone using the shuttle service. 
Examining the whole of the services provided confirms our conclusion that PNF's shuttle service
is incident to its parking service. (3)

Legislative Acquiescence

 The trial court also concluded that the doctrine of legislative acquiescence to
departmental construction supports its conclusion that PNF's shuttle service was not incident to
its parking service. That doctrine applies when a particular construction of a statute is of such
long standing that it should not be changed in the absence of clear statutory authorization. 
Humble Oil & Ref. Co. v. Calvert, 414 S.W.2d 172, 180 (Tex. 1967). In Humble Oil, the court
noted that "a statute of doubtful meaning that has been construed by the proper administrative
officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the
same construction." Id. The statute in question had been uniformly construed in a particular
manner for forty-six years. Id. at 173.

 In a more recent case, the supreme court clarified that this doctrine applies only
where there has been an affirmative long-standing administrative policy. See Sharp v. House of
Lloyd, Inc., 815 S.W.2d 245, 248 (Tex. 1991). In that case, the court concluded that a mere
failure to collect a tax for eight years did not qualify as an affirmative long-standing policy. Id. 
In a recent case from this Court, we concluded that where the Comptroller had applied a certain
construction in a rule published in the Texas Administrative Code before a recodification of the
Tax Code, the doctrine of legislative acquiescence did apply. See Fleming Foods, Inc., v. Sharp,
951 S.W.2d 278, 281 (Tex. App.--Austin 1997, pet. denied).

 In the present case, PNF's predecessor received a letter in 1984 from an employee
of the Comptroller advising the company that while the charge for parking service was taxable,
the charge for the shuttle service was not. In 1989, however, the Comptroller issued a position
letter to the contrary, stating that the entire charge for parking and transportation was taxable. 
In 1992, the Comptroller specifically advised PNF that both services were taxable. In 1993, the
policy was published in the Comptroller's newsletter. An administrative rule adopting that
construction was adopted in 1995. See Rule 3.315. While the 1984 letter is arguably more
significant than the mere failure to collect the tax in House of Lloyd, Inc., we conclude that the
1984 letter and the five years that passed before the Comptroller asserted a contradictory
construction together do not rise to such a level as to be an affirmative long-standing departmental
construction. Accordingly, the doctrine of legislative acquiescence does not require the treatment
of PNF's shuttle service as nontaxable.


Equal Protection; Equal and Uniform Taxation

 The second issue raised by the Comptroller concerns whether the taxation of the
shuttle service here violates the requirements of equal protection under the federal constitution or
the requirements of equal and uniform taxation under the state constitution. See U.S. Const.
amend. XIV; Tex. Const. art. VIII, § 1(a). The requirements of the federal equal protection
clause and the state equal and uniform taxation clause are substantially similar. Hurt v. Cooper,
110 S.W.2d 896, 901 (Tex. 1937); see Enron Corp. v. Spring Indep. Sch. Dist., 922 S.W.2d 931,
936-37 (Tex. 1996). In examining classifications of economic or property interests, the court
employs a rational-basis test. Barshop v. Medina Co. Underground Water Conservation Dist.,
925 S.W.2d 618, 631-32 (Tex. 1996) (statute is valid if rationally related to legitimate state
purpose). The trial court found that the Comptroller's application of the tax against PNF violated
both the state and federal constitution because other providers of transportation services such as
taxis, limousines, and hotel shuttles were not taxed. However, as PNF's own witness testified,
these providers do not provide transportation service related to a parking service and are generally
operated as stand-alone services. Based on that distinction, we conclude that the application of
the tax here is rationally based on whether the transportation service provided is incident to a
taxable service. (4)


Application of 5% Policy

 The trial court also concluded that the Comptroller's failure to apply a "5% policy"
to this transaction denies PNF's constitutional rights to equal protection and equal taxation. While
the policy has been applied to some taxable service categories like data processing, see 34 Tex.
Admin. Code § 3.330(d) (1997), it has not been applied to parking services. A "5% policy"
allows an exemption from taxation for unrelated, non-taxable services sold with taxable services. 
See id. If an unrelated service and a taxable service are sold for a single charge and the portion
relating to the taxable services represents more than 5% of the total charge, the entire charge is
presumed taxable. Id. The presumption may be overcome if the provider of the taxable service
states a discrete (and reasonable) charge for the taxable services at the time of sale; however,
charges for services directly related to the taxable service may not be separated and excluded from
tax. Id. The problem involved in applying the 5% policy here is that, unlike other nontaxable
services, the Tax Code expressly prohibits deducting costs of transportation incident to a taxable
service from the total sales price of a taxable item. Tax Code § 151.007(a)(4). Accordingly, even
if the Comptroller were to apply the 5% policy to parking services, such a policy would not allow
transportation costs incident to the parking services to be deducted from the total sales price.


Retroactivity of the Comptroller's Rule

 In his fourth issue on appeal, the Comptroller inquires whether Rule 3.315 is an
unconstitutionally retroactive law in violation of the Texas Constitution. "No bill of attainder,
ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be
made." Tex. Const. art. I, § 16. There was evidence at trial that Rule 3.315's construction of
Tax Code section 151.007(a)(4) had been Comptroller policy since 1989. In 1993, the policy was
addressed in Tax Policy News, a newsletter published by the Comptroller. The rule became
effective in 1995 and was made applicable as of October 1993. Because we find the rule to be
a proper construction of Tax Code section 151.007(a)(4), a statute effective in October 1993, we
conclude that Rule 3.315 was not unconstitutionally retroactive.


Other Issues

 In its third issue raised, the Comptroller queries whether Rule 3.315 is
unconstitutional because it requires a sales tax to be imposed on an off-site parking-and-transportation service. In his fifth issue, the Comptroller inquires whether a taxpayer may pursue
a cause of action for declaratory relief under the Uniform Declaratory Judgments Act in light of
the prohibition against declaratory relief contained in section 112.108 of the Tax Code. See Tax
Code § 112.108 (West Supp. 1998). PNF responds that section 112.108 is unconstitutional. In
the Comptroller's sixth issue, he asks whether the prohibition of attorney's fees in Tax Code
section 112.108 is separable from the remainder of the statute if we find the remainder of the
statute to be unconstitutional and affirm the trial court's judgment. In the seventh issue raised,
the Comptroller questions whether the evidence was sufficient to support the trial court's
judgment. Because we reverse the trial court's judgment as a matter of law and in so doing
reverse the declaratory relief and concomitant grant of attorney's fees, we need not address any
of the foregoing issues.


CONCLUSION

 We conclude that the trial court's declaratory relief and conclusions supporting its
refund of taxes to PNF are legally erroneous. We reverse the trial court's judgment and render
judgment that PNF take nothing by its suit.



 

 J. Woodfin Jones, Justice

Before Justices Aboussie, Jones and B. A. Smith

Reversed and Rendered

Filed: May 14, 1998

Publish

1. The provision reads:


 Except as provided by Subsections (c) and (d) of this section, "sales price" or
"receipts" means the total amount for which a taxable item is sold, leased, or rented,
valued in money, without a deduction for the cost of . . . transportation incident to the
performance of a taxable service.


Tax Code § 151.007(a)(4). Subsection (c), which specifically excludes certain things from "sales
price" if separately identified to the customer, does not exclude anything related to transportation. 
Subsection (d) pertains only to the sales price of certain edible products for human consumption.
2. It appears that the phrase "incident to" consistently has the meaning "related to" in the Tax
Code. See Tax Code §§ 141.001(II)(8) 153.007(a), 153.008(2), 153.011(c)(4), 153.012(d)(1),
158.057(b) (West 1992 & Supp. 1998).


 We also note that in defining the term "matters incident to an estate," the Probate Code
expressly includes "generally all matters relating to [rather than non-essential to] settlement,
partition, and distribution of estates." Tex. Prob. Code Ann. § 5A(b) (West Supp. 1998);
compare Kantor v. United States, 154 F.Supp. 58, 62 (N.D. Tex. 1956) ("incidental" expenses
are minor expenses).
3. PNF also suggests that Tax Code section 151.007(a)(4) prohibits only the deduction of costs
incurred in transporting the service provider, not in transporting the customer. Only when it is
necessary to clarify legislative intent may the courts insert additional words into a statute. Hunter
v. Fort Worth Capital Corp., 620 S.W.2d 547, 552 (Tex. 1981). We conclude that adding the
words suggested by PNF would alter, rather than clarify, the language provided by the legislature.
4. PNF's shuttle service was discussed in comparison to taxis, limousines, and hotel shuttles. 
There was testimony at trial to the effect that taxis and limousines are not generally related to
taxable services; however, hotel shuttles, to the degree they are related to hotel services, are
related to taxable services. Nonetheless, the present record is too incomplete as to taxation of
hotel shuttles for us to conclude that there is constitutionally unequal treatment between providers
of hotel shuttle services and PNF's shuttle service.


hird issue raised, the Comptroller queries whether Rule 3.315 is
unconstitutional because it requires a sales tax to be imposed on an off-site parking-and-transportation service. In his fifth issue, the Comptroller inquires whether a taxpayer may pursue
a cause of action for declaratory relief under the Uniform Declaratory Judgments Act in light of
the prohibition against declaratory relief contained in section 112.108 of the Tax Code. See Tax
Code § 112.108 (West Supp. 1998). PNF responds that section 112.108 is unconstitutional. In
the Comptroller's sixth issue, he asks whether the prohibition of attorney's fees in Tax Code
section 112.108 is separable from the remainder of the statute if we find the remainder of the
statute to be unconstitutional and affirm the trial court's judgment. In the seventh issue raised,
the Comptroller questions whether the evidence was sufficient to support the trial court's
judgment. Because we reverse the trial court's judgment as a matter of law and in so doing
reverse the declaratory relief and concomitant grant of attorney's fees, we need not address any
of the foregoing issues.


CONCLUSION

 We conclude that the trial court's declaratory relief and conclusions supporting its
refund of taxes to PNF are legally erroneous. We reverse the trial court's judgment and render
judgment that PNF take nothing by its suit.



 

 J. Woodfin Jones, Justice

Before Justices Aboussie, Jones and B. A. Smith

Reversed and Rendered

Filed: May 14, 1998

Publish

1. The provision reads:


 Except as provided by Subsections (c) and (d) of this section, "sales price" or
"receipts" means the total amount for which a taxable item is sold, leased, or rented,
valued in money, without a deduction for the cost of . . . transportation incident to the
performance of a taxable service.


Tax Code § 151.007(a)(4). Subsection (c), which specifically excludes certain things from "sales
price" if separately identified to the customer, does not exclude anything related to transportation. 
Subsection (d) pertains only to the sales price of certain edible products for human consumption.
2. It appears that the phrase "incident to" consistently has the meaning "related to" in the Tax
Code. See Tax Code §§ 141.001(II)(8) 153.007(a), 153.008(2), 153.011(c)(4), 153.012(d)(1),
158.057(b) (West 1992 & Supp. 1998).


 We also note that in defining the term "matters incident to an estate," the Probate Code
expressly includes "generally all matters relating to [rather than non-essential to] settlement,
partition, and distribution of estates." Tex. Prob. Code Ann. § 5A(b) (West Supp. 1998);
compare Kantor v. United