

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00182-CV

WALID ELESAWI, APPELLANT

V.

THE STATE OF TEXAS, CITY OF PLANO, TEXAS, AND
THE TRANSIT AUTHORITY OF DALLAS MTA, TEXAS, APPELLEES

On Appeal from the 250th District Court
Travis County, Texas,
Trial Court No. D-1-GV-14-000381, Honorable Lora J. Livingston, Presiding

April 20, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

In this tax collection case involving a convenience store that thrice underreported its tax liability by as much as twenty-five percent, Appellant, Walid Elesawi, appeals from a final judgment awarding Appellees, the State of Texas, City of Plano, and Transit Authority of Dallas MTA, $204,717.39 in past due state, municipal, and transit authority sales and use tax, and penalties/interest, in

addition to $50,000 attorney fees.[1]  In three issues, Elesawi asserts the State's

evidence was legally and factually insufficient to establish that he was personally

liable for delinquent sales and use taxes owed by American Galaxy, Inc. (1) under

section 111.016(b) of the Texas Tax Code as a "responsible" individual who

"willfully" failed or caused taxes to go unpaid, (2) under section 111.0611 as an

officer, manager, or director of American Galaxy who took an action or participated

in a fraudulent scheme or plan to evade the payment of taxes, and (3) attorney

fees pursuant to section 2107.006 of the Texas Government Code.[2]  We affirm.

Applicable Statutes

Section 111.016 states, in pertinent part, as follows:

(a) Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.

(b) With respect to tax or other money subject to the provisions of subsection (a) . . ., an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and who willfully fails to pay or cause to be paid the tax or money is liable as a responsible individual for an amount equal to the tax or money not paid or caused to be paid.  The liability imposed by this subsection is in addition to any other penalty provided by law. The dissolution of a corporation, association, limited liability

---

[1] This appeal was transferred to this Court from the Third Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedents of that court to the extent they conflict with our own.  *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. TAX CODE Ann. §§ 111.016(b), 111.0611; TEX. GOV'T CODE Ann. § 2107.006. Throughout the remainder of this opinion, we will refer to provisions of the Texas Tax Code as "section ___" or "§ ___."

company, or partnership does not affect a responsible individual's liability under this subsection.

\* \* \*

(d) In this section:

(1) "Responsible individual" includes an officer, manager, director, or employee of a corporation . . . who, as an officer, manager, director, employee, or member, is under a duty to perform an act with respect to the collection, accounting, or payment of a tax or money subject to the provisions of Subsection (a).

Section 111.0611 states, in pertinent part, as follows:

(a) An officer, manager, or director or a corporation . . . who as an officer, manager, director, or partner, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes . . . is personally liable for the taxes and any penalty and interest due.

Section 2107.004 of the Texas Government Code states as follows:

In any proceeding under this chapter or other law in which the state seeks to collect or recover a delinquent obligation or damages, the attorney general may recover reasonable attorney fees, investigative costs, and court costs incurred on behalf of the state in the proceeding in the same manner as provided by general law for a private litigant.

Procedural Background

In April 2014, the State sued American Galaxy to recover past due sales taxes, penalties, and interest. The State also sued Elesawi and Abeer Abueliz, American Galaxy's registered agent, to recover the sales taxes, penalties and interest owed by American Galaxy pursuant to sections 111.016 and 111.0611, in addition to attorney fees pursuant to section 2107.006 of the Texas Government Code.

In July 2014, the trial court rendered a default judgment against American Galaxy after the corporation failed to answer the State's lawsuit. In January 2017,

3

the trial court rendered a default judgment against Abueliz for refusing to participate in her deposition. In August 2018, the State added Belal Eisawi, American Galaxy's President, as a defendant. The trial court rendered a default judgment against Belal after he failed to answer the State's lawsuit.

In December 2019, the trial court held a bench trial of the State's suit against Elesawi and on March 2, 2020, entered a final judgment in the State's favor. The judgment awarded the State $155,088.97, the City of Plano $24,814.21, and the Transit Authority of Dallas $24,814.21 in sales tax, penalties, and interest from Elesawi and all other defendants, jointly and severally, $50,000 in attorney fees from Elesawi, and all costs of court from Elesawi and all other defendants, jointly and severally.[3]

On March 31, 2020, the trial court issued its *Findings of Fact and Conclusions of Law*. In its *Findings of Fact*, the trial court determined that from August 1, 2009, through May 31, 2013, Elesawi was an officer, manager, director, or employee who was under a duty to perform an act with respect to the collection, accounting, or payment of Texas sales and use tax. The trial court also determined that during the same period, he controlled or supervised the collection of the taxes from American Galaxy's customers while recklessly disregarding the risk that the taxes would not be paid. In his representative capacity and while under a duty to perform, the trial court determined that Elesawi, as a responsible person, willfully failed to pay or cause to be paid the sales tax collected by American Galaxy and

---

[3] Elesawi does not challenge the amount of the monetary damages awarded against him.

4

as an officer, manager or director, took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes. In its *Conclusions of Law*, the trial court found that Elesawi was a "responsible individual" within the meaning of sections 111.016 and 111.0611 and as such, was personally liable for the sales and use taxes, penalties, and interest incurred by American Galaxy but not yet paid for the period August 1, 2009, through May 31, 2013.

## Standard of Review

Findings of fact in a bench trial, as here, are reviewable for legal and factual sufficiency by the same standards applied in reviewing a jury's findings. *State v. Crawford*, 262 S.W.3d 532, 544 (Tex. App.—Austin 2008, no pet.) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). It is well established that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See City of Keller v. Wilson*, 165 S.W.3d 802, 819 (Tex. 2005). Therefore, to give proper deference to the factfinder's role, we resolve all conflicts of credibility in favor of the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence if a reasonable factfinder could have disbelieved it. *Id.* In reviewing the legal sufficiency of the evidence on issues for which Elesawi did not possess the burden of proof at trial, we examine whether there is no evidence or no more than a scintilla of evidence to support the adverse finding. *City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.).[4]

---

[4] At trial, the State bore the burden of proving whether he was a "responsible person" who "willfully" failed or caused taxes to go unpaid under section 111.016(b), and he was an officer,

5

When reviewing factual sufficiency, appellate courts must examine the evidence that both supports and contradicts the verdict in a neutral light. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (2001) (per curiam). We still defer to the factfinder's implicit determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 445 (Tex. App.—Austin 2006, pet. denied). Therefore, when a party brings a factual sufficiency challenge to a finding on which the party did not have the burden of proof, we consider and weigh all the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). *See Chandler*, 428 S.W.3d at 407.

With these standards in mind, we turn to Elesawi's sufficiency challenges in this case.

*Issues One and Two*

Elesawi does not challenge the sufficiency of the evidence supporting the amount of tax, penalty, and interest due. The only question in the first two issues is whether sufficient evidence supports the trial court's finding that Elesawi is responsible for its payment. Section 111.016(b) defines a "responsible individual" as:

manager, or director of American Galaxy who took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes under section 111.0611. The State also bore the burden of proof on its attorney's fee award.

> an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or money is liable as a responsible individual . . . .

§ 111.016(b). A "responsible individual" includes "an officer, manager, director, or employee of a corporation . . . who . . . is under a duty to perform an act with respect to the collection, accounting, or payment of a tax." § 111.016(d). Responsible individuals are liable "for an amount equal to the tax or money not paid or caused to be paid." § 111.016(b). Under section 111.0611(a), "[a]n officer, manager, director, or partner, [who] took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes . . . is personally liable for the taxes and any penalty and interest due."[5]

For purposes of section 111.016(b), a responsible individual acts "wilfully" if (1) he has knowledge that taxes are due to the State and uses unencumbered funds to pay other creditors, or (2) he recklessly disregards the risk that taxes may not be remitted to the government. *Crawford*, 262 S.W.3d at 542. The "reckless disregard" standard is met when a responsible person (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily. *Khan v. State*, No. 03-09-00708-CV, 2011 Tex. App. LEXIS 7270, at *25 (Tex. App.—Austin Aug. 31, 2011, no pet.) (mem. op.). "Reckless disregard includes failure to investigate or

---

[5] The relevant provisions of the Tax Code do not define the term "manager." The common definition of "manager" is "a person who conducts business." Merriam-Webster's Collegiate Dictionary 754 (11th Ed. 2014). *See Sharp v. Park 'n Fly*, 969 S.W.2d 572, 575 (Tex. App.—Austin 1998, pet. denied) (when Tax Code does not supply a definition, a common definition is applied).

7

correct management after being notified that taxes have not been paid"; *Crawford*, 262 S.W.3d at 547, and gross negligence is sufficient to establish reckless disregard. *Khan*, 2011 Tex. App. LEXIS 7270, at *25. "[I]f the term 'wilfully' required a 'higher' mental state [such as actual knowledge], a corporate official could thwart the statute's purpose just by compartmentalizing responsibilities within a business (however small) and adopting a 'hear no evil--see no evil' policy." *Crawford*, 262 S.W.3d at 541-42 (citing *Wright*, 809 F.2d at 427).

The State's evidence at trial established that in April 2014 American Galaxy operated a convenience store known as Beverage Island in McKinney, Texas. Elesawi, Abueliz (his wife), and Belal (his brother), were involved in the formation of American Galaxy and the opening of the store in late 2000 and early 2001.[6] Prior to the store's opening, Elesawi helped his brother apply for the documentation necessary to incorporate. Elesawi drafted an assumed name certificate for Beverage Island and signed the certificate as an "officer, representative, or attorney in fact for the corporation." At the outset, Elesawi managed the store and participated in day-to-day operations. He had access to American Galaxy's bank account and sole check-writing authority for the corporation/store.[7] His email address was used as the corporation/store's point-

---

[6] American Galaxy's Articles of Incorporation identified Abueliz as American Galaxy's registered agent and incorporator. Belal was identified as its President.

[7] Elesawi had sole check-writing authority at Bank of America and was signatory for American Galaxy from 2001 through 2013. In May 2011, he filed the store's Texas Franchise Tax Extension Request and signed a check on American Galaxy's behalf for $1,600 drawn on a second account at Compass Bank. For 2008, 2009, and 2010, Elesawi filed Texas Franchise Tax extension requests, tax reports, public information reports, and signed checks in payment of American Galaxy's tax.

8

of-contact, and he signed/filed tax returns and checks for payment to the Comptroller for sales and use taxes collected from customers at the point of sale,[8] as well as franchise taxes.[9] And, when an issue related to theft arose at the store, Elesawi testified he "controlled" the problem.

For the period January 1, 2004, through May 31, 2007, the Comptroller performed an audit of American Galaxy's sales and use tax payments. During the audit, American Galaxy was unresponsive and failed to provide any documents. The State ultimately filed a lien action encompassing an estimated deficiency in tax payments of $81,569.48.[10] Elesawi settled the deficiency for a cash payment of $76,035.73, signing the settlement agreement "MGR" on behalf of American Galaxy[11]; he also signed the check. Following a second audit for the period of January 1, 2008 through July 31, 2008, Elesawi settled a second deficiency in the

---

[8] Individual items sold to customers were totaled on a cash register that automatically added sales tax to the purchase. The store then collected the tax for the purchase at the "point of sale" from the customer.

[9] In February 2005, American Galaxy's certificate of authority was revoked for its failure to file a state franchise tax return and pay its taxes. In May 2005, American Galaxy was reinstated. On Texas Franchise Tax Public Information Reports for 2008, 2009, 2010, Elesawi was identified under "Title" as "GM," or General Manager. In 2011, he also signed a Texas Franchise Tax Extension Request and a check as payment for $1,000.

[10] Because American Galaxy failed to provide adequate documentation, the Comptroller was required to estimate its taxes based on third-party documentation from vendors, inventory shelf counts, and computer models.

[11] Elesawi testified that he interpreted "MGR" as meaning "manager." In response to questions by the trial judge, he also testified that on that day, he was acting as a manager on American Galaxy's behalf.

9

payment of state sales and use tax and signed a check on American Galaxy's behalf for $10,971.04.[12]

In 2009, Elesawi signed agreements with the Comptroller to extend the period of limitation and allow American Galaxy to prepare and complete an audit for the store's reporting period of August 1, 2009, through August 31, 2009.[13] After a series of extensions, Elesawi signed a final extension for an audit period encompassing August 1, 2009, through November 20, 2013, as "MGR-Agent" on behalf of American Galaxy. During this period, the auditors referred to Elesawi as owner and manager. In all of American Galaxy's e-filed sales and use tax returns from October 2008 through June 2013, Elesawi was identified as the "preparer;" his email address was used as the point-of-contact for American Galaxy.

When the Comptroller sent a records request to Belal, there was no response. In response to a second letter threatening to subpoena American Galaxy's records, Elesawi responded indicating that when Belal returned to the United States in two weeks, he would provide the requested documents. When Belal failed to meet with the Comptroller or provide any records, Elesawi sought a

---

[12] The audit established that during the period, American Galaxy grossly underreported its sales tax a second time by approximately twenty-five percent resulting in a total shortfall of $12,223.13. During the audit, American Galaxy was similarly unresponsive and failed to provide documentation.

[13] In an Audit Referral Report for Additional Penalty, the auditor indicated that for the audit period of June 1, 2007-July 31, 2009, Elesawi signed tax returns, tax payment checks, accepted and signed for inventory, deliveries, operating expenses, and made deposits. In September 2009, an auditor indicated Elesawi was involved in day-to-day operations. In January 2013, an auditor's note indicated that a store clerk confirmed that "Joe Eisawi" was "the owner of the business." A subsequent note identified "Joe Eisawi" as Mr. Walid Eisawi.

limited power of attorney from American Galaxy to become the authorized contact between the corporation and the Comptroller.

In May 2013, Belal executed a limited power of attorney granting Elesawi the powers and duties to act as American Galaxy's agent, including receiving mail from the Comptroller regarding tax audits, providing representation, and making oral and written representations of fact and argument related to the contested case covering sales tax governing August 1, 2009, to August 13, 2013.

On June 19, 2013, Elesawi attended an entrance conference and produced some American Galaxy records. As in prior audits, Elesawi did not produce requested federal tax returns or cash register receipts for review.[14] On June 24, Elesawi provided partial bank statements from a second bank, Compass Bank, but again produced no federal tax returns or cash register receipts. Thereafter, the Comptroller attempted to contact Elesawi to no avail.

On August 3, 2013, as the audit was pending, American Galaxy obtained a Certificate of Account Status from the Comptroller of Public Accounts indicating that American Galaxy had filed all required tax reports and the "taxes due on those reports" had been paid.[15] Shortly thereafter on August 12, 2013, American Galaxy

---

[14] In an earlier audit where the Comptroller found American Galaxy grossly underrepresented its sales and use tax, representatives for American Galaxy indicated the store used a digital system that recorded its receipts including sales tax paid by customers. Records from such a digital system were never produced by American Galaxy for any audit. In March 2013, an auditor visited the store and indicated that, at the end of each day, cash register tapes and cash were dropped into a safe.

[15] From August 1, 2009 through November 20, 2013, there had been no audit results for American Galaxy indicating a deficiency in its sales tax reporting and payments. Thus, in essence, the Certificate showed that according to American Galaxy's reporting, there were no taxes due. Meanwhile, the current audit process was pending due to an inability to contact Elesawi, a lack of

11

filed for a Certificate of Termination of a Domestic Entity with the Secretary of State. The filing made no mention of the audit and indicated American Galaxy had made a voluntary decision to wind up the entity. The effective date of this Certificate was August 15, 2013.

On October 2, 2013, auditors learned of American Galaxy's decision to terminate. Less than three weeks later, auditors completed the audit, finding that American Galaxy had again grossly underreported sales taxes and owed an additional $97,871.46. When Elesawi did not respond or appear at an exit conference in early November, an auditor mailed the results to Elesawi and visited the location of the convenience store. The store had been sold and was closed for remodeling by 7-Eleven.[16]

We find that legally and factually sufficient evidence supports the trial court's findings and judgment. The State's evidence establishes, at the least, that Elesawi was American Galaxy's manager for the relevant time period. He drafted incorporating documents, oversaw its day-to-day operations, used his email address as the corporation's point of contact, had sole check-writing authority and authority over its bank accounts, interfaced with tax regulators on audits, and prepared/filed/paid franchise and sales/use taxes for the corporation. He also

---

any documentation of sales and use tax receipts, and a process requiring auditors to compare third-party vendor invoices to the store's inventory using shelf counts, and computer modeling to compute back taxes owed.

[16] Property records indicate American Galaxy, Inc. deeded the store to 7-Eleven Inc. on July 25, 2013 (real commercial property)—four months prior to the end of the audit period. On January 1, 2014, Belal sold his tangible commercial personal property at the same address as the store to 7-Eleven Inc.

signed sales and use tax settlements as American Galaxy's "MGR" – which the trial court could interpret as "manager"– or agent, was identified as its "preparer" and filer of sales and use tax e-filed returns, and auditors identified him as American Galaxy's manager and/or owner. Clearly, the State's evidence establishes that during the relevant audit period, Elesawi held himself out on American Galaxy's behalf as a manager who was under a duty to perform an act with respect to the collection and/or payment of state sales and use tax, i.e., a "responsible person" and "manager" under sections 111.016 and 111.0611.

The State's evidence also establishes that as American Galaxy's manager, Elesawi "willfully failed" to pay the corporation's sales and use tax due during the final audit and engaged in a fraudulent scheme to evade the payment of such taxes. First, after two audits running from January 1, 2004, through July 31, 2008, and knowing that American Galaxy was underreporting its sales and use taxes by twenty-five percent and owed deficiencies of more than $90,000, Elesawi did not implement any internal controls at the store to correct the ongoing deficiencies. Second, not only was American Galaxy's sales and use tax repeatedly underreported, but Elesawi engaged in a pattern of being nonresponsive to the Comptroller's document requests; providing insufficient documentation to allow auditors to calculate its tax, and delaying collection proceedings. While Elesawi managed American Galaxy, this pattern and practice of underreporting its taxes, being nonresponsive to auditors, and delaying collection proceedings continued through the final audit period.

13

After the first entrance conference for the third audit, the Comptroller was unable to contact Elesawi. Without notice to the auditors, American Galaxy then terminated the company and sold its real estate to 7-Eleven before the audit was complete. From the State's evidence of Elesawi's continuous management of the store throughout its operation, the trial court could infer that Elesawi continued to operate the store throughout the final audit, drew up the corporate papers for termination, and completed a plan to frustrate collection of the delinquent sales tax.

Elesawi testified that after 2005, he quit being a manager for American Galaxy[17] and his only participation in its operation was to show up at the store once a week and sign blank checks filled out to whomever the money was due. He testified that from 2005 to the termination of the company and sale of the store, he knew nothing about its business and had no responsibility for its operation. The trial court was the sole judge of the credibility of Elesawi's denials of knowledge and involvement. In fact, given the results of the first two audits, the failure to implement internal controls, and an apparent lack of any financial documentation of the store's sales or cash register receipts cataloging the tax paid by customers, the trial court had more than a sufficient basis to doubt the truthfulness of Elesawi's denial of any clue that a third audit would indicate any different result regarding suspected delinquent sales taxes. *Chandler*, 428 S.W.3d at 407 (an appellate court may not substitute its judgment on such issues).

---

[17] In his affidavit executed in April 2017, Elesawi stated he was employed as a manager from 2001 to 2008.

14

Having reviewed the entire record, we cannot say the State's evidence is so weak as to make the trial court's findings clearly wrong and manifestly unjust. *Id.* We find the State's evidence legally and factually sufficient, and overrule issues one and two.

*Issue Three*

Elesawi asserts the State failed to prove its attorney fees because its billing documentation (1) did not describe the "nature of the work" performed (2) did not distinguish between differing pay scales and qualifications of legal assistants; and (3) whether fifty hours spent by the State's lead counsel on Elesawi's case after January 18, 2019 includes hours worked by legal assistants in addition to his own.[18]

A reviewing court reviews a trial court's award of attorney's fees for an abuse of discretion. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam)). To establish a reasonable attorney's fee award, the lodestar analysis is applied to an objective calculation of reasonable hours worked times a reasonable rate. *Rohrmoos Venture v. UTSW DVA Healthcare, L.L.P.*, 578 S.W.3d 469, 498 (Tex. 2019). Under the lodestar method of calculating

---

[18] Elesawi also asserts evidence of the State's attorney's fees should have been the subject of a bifurcated hearing. When the State presented its evidence on attorney's fees at the end of its case-in-chief, no objection was made by opposing counsel. Moreover, Elesawi does not support this contention with any discussion, legal analysis, or caselaw. Although we are to construe the rules of appellate procedure liberally; *see Republic Underwriters Ins. Co. v. Mex-Tex. Inc.*, 150 S.W.3d 423, 427 (Tex. 2004), in this case, the briefing is so inadequate that we would have to make his arguments for him. This we will not do. *In re Moon*, 216 S.W.3d 506, 511 n.3 (Tex. App.—Texarkana, no pet.).

attorney's fees, a prevailing party must include evidence of (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. *El Apple I, Ltd. v. Olivas,* 370 S.W.,3d 757, 762 (Tex. 2011). "[I]n all but the simplest cases, the attorney [will] probably have to refer to some type of record or documentation to supply this information. *Id.* Our state's Supreme Court has clarified there is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party. *Rohrmoos*, 578 S.W.3d at 499.

Elesawi asserts the State's billing records are inadequate because they include vague entries. He makes the general allegation without citing specific parts of the trial record. Moreover, he does not discuss any specific billing entries he contends are vague. Even under a liberal construction of Elesawi's briefing, he has not adequately briefed this issue. *See* TEX. R. APP. P. 38.1(i); *Finserv. Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 142 (Tex. App.—Houston [14 th Dist.] 2016, pet. denied).

Elesawi also asserts the State is not entitled to its fee because hourly charges by various paralegals did not differentiate levels of pay and/or qualifications in the State's itemized billing records. However, the record reflects that the State did not seek to recover any paralegal or legal assistant fees. The State only sought recovery of $50,000 in attorney's fees based solely on the time spent by its lead attorney on Elesawi's case at an hourly rate of $275. As for Elesawi's claim that hours worked on the case by the State's lead attorney

16

"presumably" included hours of other staffers earning less pay, the State's lead attorney's testimony reflects that the State specifically sought an award of $50,000 based on time expended *solely* by its lead attorney at the rate of $275 per hour for 181.81 hours. The State did not seek recompense for the hours of its legal assistants, paralegals, and attorneys who also worked on the case.

We find the trial court did not abuse its discretion in awarding the State $50,000 in compensation for its attorney fees related to prosecution of claims against Elesawi for delinquent taxes. Elesawi's third issue is overruled.

Conclusion

The trial court's judgment is affirmed.


Lawrence M. Doss
Justice