# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00822-CV

**DuPont Photomasks, Inc., Appellant**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN303695, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

In order to manufacture sensitive electronic equipment, DuPont Photomasks, Inc. ("DuPont") entered into an agreement for the construction of a sterile, controlled chamber ("cleanroom") and a building to house the chamber. After the building was constructed, DuPont leased the building and the cleanroom to another company. DuPont did not pay sales tax on the parts purchased for the construction of the cleanroom and claimed that, because it purchased the items with the intent of ultimately leasing the cleanroom, it was entitled to the sale-for-resale exemption from the payment of sales tax. *See* Tex. Tax Code Ann. § 151.006 (West 2002). The Comptroller disagreed and concluded that, under the relevant statutes and administrative rule, DuPont was not entitled to the exemption. *See* 34 Tex. Admin. Code § 3.294(k) (2006). DuPont paid the amount in question under protest and initiated an administrative hearing. After the hearing, the Comptroller issued an order stating that DuPont did not qualify for the exemption. DuPont

appealed to the district court, contending that it was entitled to a refund and seeking a declaration that the Comptroller's administrative rule was invalid and inconsistent with the relevant statutory authority. The district court declared that the rule was valid and granted summary judgment in favor of the Comptroller. DuPont appeals the judgment of the district court, and we will affirm the court's judgment.

## BACKGROUND

DuPont manufactures photomasks, which are quartz or glass plates impressed with a metal layer that are used in the production of semiconductors. To properly manufacture a photomask, DuPont must produce the masks in a "cleanroom," which is a sterile, controlled environment in which potentially contaminating materials are filtered out.

In 1996, DuPont entered into a joint venture with three semiconductor manufacturers—Micron Technologies, Inc.; Motorola, Inc.; and Advanced Micro Devices, Inc.—to create the DuPont Photomasks, Inc. Reticle Technology Center, L.L.C. (the "Center") for the purpose of developing technologies for the fabrication of leading-edge photomasks. The joint venture was created by an "operating agreement" between the companies. Under the terms of the agreement, each member of the Center was entitled to an equal amount of the Center's production and was able to purchase, at cost, the photomasks manufactured on its behalf.

The agreement specified that DuPont would construct and operate a "Facility" for the purpose of satisfying the objectives of the joint venture. The agreement further defined the "Facility" as "the development and manufacturing facility to be constructed . . . and leased by [DuPont] to the [Center] and dedicated to the [Center's] business."

2

Shortly after the agreement was finalized, DuPont entered into contracts for the construction of two buildings. The first building was approximately 17,000 square feet and was designed to house a 5,500 square foot cleanroom. The cleanroom was assembled using various items including a raised floor; moveable anti-static inner walls, partitions, outer walls, and air-handling equipment for air circulation; a moveable ceiling; special electrical wiring; and climate control equipment. The remainder of the first building contained more traditional business spaces including offices for the Center's employees. The second building was designed to contain a deionized water plant and other equipment necessary for the operation of the cleanroom. Both buildings were constructed on land owned by DuPont. The construction of the cleanroom cost $7.3 million, and the construction of the remainder of the buildings cost $2.09 million.

After the buildings were constructed, DuPont rented the buildings, including the cleanroom, to the Center in one lease.[1] Under the lease, DuPont agreed to rent the following to the Center:

[T]he premises (the "Premises") consisting of

 (I) all of [DuPont's] right, title and interest in the land (the "Land") . . . ,

 (ii) all right, title and interest of [DuPont] in and to all buildings and other structures and fixtures now or hereafter located on the Land (the "Improvements"), and

---

[1] Both the lease and the operating agreement were reviewed *in camera* by the district court. Although neither exhibit was included in the appellate record, neither party contests the descriptions of and quotations from these documents found in the briefs. Accordingly, we will accept the briefs' characterizations of these documents as true. *See* Tex. R. App. P. 38.1-38.2.

(iii) all right, title and interest of [DuPont] in and to the easements, rights and appurtenances relating to the Land and the Improvements . . . .

The lease required the Center to make monthly payments but did not specify what portions of the rent were attributable to use of the cleanroom or any other individual portion of the buildings; on the contrary, the lease only specified one single rent payment for the lease of the entire structure.

DuPont did not pay sales tax on the purchase of the items used to construct the cleanroom. Rather, it asserted that its purchase of the cleanroom qualified for the sale-for-resale exemption from sales tax provided in the tax code because the items used to construct the cleanroom were purchased with the intention that the cleanroom would be leased to the Center. *See* Tex. Tax Code Ann. § 151.006. However, DuPont did not provide resale certificates to the companies that it purchased the items from. *See id.* § 151.151 (West 2002) (rather than paying tax, purchaser may give resale certificate when acquiring taxable item if purchaser intends to sell or lease item in regular course of business).

The Comptroller performed an audit on DuPont to determine what amount if any DuPont owed as sales tax for the period between January 1, 1996, and October 31, 1997. During the audit, the Comptroller concluded that, under the relevant provision of the administrative code interpreting the sale-for-resale exemption, DuPont's purchase of the items used to construct the cleanroom did not qualify for the exemption. *See* 34 Tex. Admin. Code § 3.294(k)(1). Accordingly, the Comptroller notified DuPont that it owed sales and use taxes in the amount of $558,389.51 and issued a penalty of $230,894.99. *See* Tex. Tax Code Ann. §§ 111.008 (West 2002) (if Comptroller

4

is not satisfied with tax report, Comptroller may determine amount of tax to be paid), .061 (authorizing imposition of penalty).

DuPont contested the amount of taxes and penalty owed, and an administrative hearing was conducted. An administrative law judge issued a proposal for decision concluding that the cleanroom qualified under the sale-for-resale exemption. However, after the hearing, the Comptroller issued a decision in which she concluded that the leasing of the cleanroom did not qualify for the exemption. The Comptroller reasoned that the sale-for-resale exemption does not apply to tangible personal property purchased for lease in conjunction with the lease of real property. Further, the Comptroller concluded that, because the cleanroom was leased along with the remainder of the two buildings, DuPont could not invoke the sale-for-resale exemption. After the Comptroller's opinion was issued, DuPont paid, under protest, the taxes, penalties, and accrued interest assessed. *See id.* § 112.051 (West 2002) (if person required to pay taxes contends amount imposed is improper, person must pay fee and submit protest with fee).

DuPont then filed suit against the Comptroller and the Attorney General. *See id.* §§ 112.052 (person who paid under protest may file suit), 112.053 (West 2002) (suit must be against Comptroller and Attorney General). In its suit, DuPont sought recovery of the taxes, penalty, and interest it had previously paid and asked the district court to declare that rule 3.294(k) is invalid and that the lease of the cleanroom qualified for the sale-for-resale exemption. Both parties moved for summary judgment. The district court declared that rule 3.294(k) is valid and granted summary judgment in favor of the Comptroller. DuPont appeals the decision of the district court.

5

**STANDARD OF REVIEW**

The standards for obtaining a traditional summary judgment are well established: the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true, must indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Sergeant Enters., Inc. v. Strayhorn*, 112 S.W.3d 241, 245 (Tex. App.—Austin 2003, no pet.) (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)).  We review the trial court's decision to grant summary judgment de novo.  *Id.* (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994)).

Generally, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and, thus, not appealable.  *Id.* (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)).  However, when both parties move for summary judgment and the district court grants one motion and denies the other, the unsuccessful party may appeal both the grant of the prevailing party's motion and the denial of its own.  *Id.* (citing *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996)).  In such a case, we will review the summary judgment evidence offered by both sides, determine all questions presented, and render the judgment the trial court should have rendered.  *Id.* (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

**DISCUSSION**

DuPont raises four issues on appeal.  First, it asserts that rule 3.294(k)(1) exceeds the Comptroller's rulemaking authority and is, therefore, invalid.  Next, it contends that its purchase of

the items used in the construction of the cleanroom qualified for the sale-for-resale exemption. Third, it argues that the district court erred by excluding certain evidence attached to DuPont's motion for summary judgment. Finally, it asserts that a legislative rider, which prohibits a tax refund over $250,000 without legislative approval, improperly restricts its ability to obtain the refund, is contrary to the directives of the tax code, and violates the Texas and federal constitutions.

**Rule 3.294(k)(1) is Valid**

In its first issue on appeal, DuPont asserts that rule 3.294(k)(1) is invalid because it exceeds the Comptroller's rulemaking authority and is contradictory to subsection 151.006(2) of the tax code. DuPont argues that subsection 151.006(2) requires a subjective determination when ascertaining whether a taxpayer is entitled to the sale-for-resale exemption but that rule 3.294(k)(1) improperly imposes an objective standard. Specifically, DuPont insists that, when a taxpayer attempts to invoke the sale-for-resale exemption for personal property purchased for the purpose of leasing it under an agreement that leases both real property and the personal property purchased, subsection 151.006(2) mandates that an assessment of the relative importance of the leasing of the two types of properties be undertaken: if leasing the personal property is of greater importance than leasing the real property, the taxpayer may invoke the sale-for-resale exemption and not pay sales tax on the purchase of the personal property. Further, it contends that the Comptroller's interpretation does not allow for this comparison and impermissibly forbids the invocation of the exemption in connection with the purchase of personal property if the personal property is leased in conjunction with real property, no matter how insignificant the leasing of the real property is to the overall agreement.

Under the tax code, the lease of tangible personal property is a sale that is subject to taxation. *See* Tex. Tax Code Ann. §§ 151.005 (West Supp. 2006) (definition of "sale"), .009 (West 2002) (definition of "tangible personal property"), .010 (tangible personal property is a "taxable item"), .051 (imposing sales tax on "taxable items"). However, if certain requirements are satisfied, the lease of tangible personal property may be exempt from taxation under the sale-for-resale exemption. The purpose of the sale-for-resale exemption is to prevent double taxation. *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied). Under the relevant portions of the tax code, a "sale for resale" means a sale of

(1) tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service; [or]

(2) tangible personal property to a purchaser for the sole purpose of the purchaser's leasing or renting it in the United States of America . . . to another person, but not if incidental to the leasing or renting of real estate; . . .

Tex. Tax Code Ann. § 151.006 (1)-(2). The tax code further provides that the "sale for resale of a taxable item is exempted from" sales and use taxes. *Id.* § 151.302(a) (West 2002).

The Comptroller's rule interpreting the sale-for-resale exemption reads, in relevant part, as follows:

(k) Lease of real property with tangible personal property.

(1) If a contract for the lease or rental of real property includes the lease or rental of tangible personal property (such as furniture) as part of the agreement, no sales tax is due on the amount charged the tenant for the lease or rental of the tangible personal property. A resale certificate may not be issued and sales or use

8

> tax must be paid at the time the tangible personal property is purchased.

34 Tex. Admin. Code § 3.294(k)(1); *see also* Tex. Tax Code Ann. § 111.002 (West 2001) (Comptroller may adopt rules that do not conflict with laws of this State).

Relying on a previous case issued by this Court and referring to definitions of the phrase "incidental to" found in various dictionaries, DuPont contends that the phrase "incidental to" found in section 151.006 means subordinate to or a minor accompaniment. *See Sharp v. Park 'N Fly of Tex.*, 969 S.W.2d 572, 574 (Tex. App.—Austin 1998, pet. denied); *see, e.g., Black's Law Dictionary* 523 (abridged 6th ed. 1983) (incidental means "[d]epending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal . . . "). Therefore, DuPont insists that section 151.006 allows a taxpayer to invoke the sale-for-resale exemption for the purchase of personal property to be leased under an agreement also leasing real property if the leasing of the personal property is of greater importance than the leasing of the real property. Based on this reading of section 151.006, it argues that, because rule 3.294(k) does not include the phrase "incidental to" or allow for an assessment of the relative importance of the personal and real property leased under one instrument, rule 3.294(k) improperly prohibits the invocation of the exemption for the lease of real and personal property when the lease of the personal property is of paramount importance to the agreement. Accordingly, DuPont insists that the rule runs afoul of the plain language of the statute and, therefore, exceeds the rulemaking authority of the Comptroller. *See* Tex. Gov't Code Ann. § 311.011 (West 2005) (words and phrases shall be construed according to rules of grammar and common usage).

We disagree with DuPont. In determining whether a rule is valid, we are limited to ascertaining whether the rule is contrary to the relevant statute. *State v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied). While an agency's rules must comport with the agency's authorizing statute, the legislature is not required to include every specific detail or anticipate all unforeseen circumstances. *Id.* Further, when making our determination, an agency rule is presumed valid, and the challenging party bears the burden to demonstrate its invalidity. *Office of Pub. Util. Counsel. v. Public Util. Comm'n*, 104 S.W.3d 225, 232 (Tex. App.—Austin 2003, no pet.). We will defer to an agency's interpretation as long as it is reasonable and does not contradict the plain meaning of the statute. *Perry Homes v. Strayhorn*, 108 S.W.3d 444, 448 (Tex. App.—Austin 2003, no pet.); *see also Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (agency's construction is entitled to serious consideration); *Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 64 (Tex. App.—Austin 1995, writ denied) (court bound to accept Comptroller's interpretation of exemption if interpretation is reasonable, in that it harmonizes with relevant statute).

First, we note that, contrary to DuPont's assertions, the meaning of "incidental to" found in the second portion of the sale-for-resale exemption is unclear. Various definitions for the phrase "incidental to" indicate that the phrase can have the same meaning as the phrase "incident to." The entry for "incidental to" found in *A Dictionary of Modern Legal Usage* defines "incidental to" as meaning "happening by chance and subordinate to some other thing; peripheral." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 430 (2d ed. 1995). However, the entry also specifies that the phrase "incidental to" has historically been used interchangeably with the phrase "incident to," which is defined as meaning "closely related to; naturally appearing with." *Id.* The interchangeability of these phrases is also acknowledged in another authority cited by DuPont. *See*

10

*Oxford Universal Dictionary on Historic Principles* 1523 (3d ed. 1955) ("incident" can be defined as "incidental"); *see also Webster's Seventh New Collegiate Dictionary* 580 (1971) (one definition for "incident" specifies that it can mean "something dependent on or subordinate to something else of greater or principal importance"). Because the meaning of the language of the statute is unclear and because the statute is a tax exemption statute, we construe the statute in favor of the taxing authority and against the taxpayer. *See Upjohn v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied).

DuPont asserts that, in *Park 'N Fly*, we previously adopted a definition of the phrase "incidental to" as meaning subordinate to something else. In *Park 'N Fly*, this Court had occasion to consider whether a business that offered parking and airport transportation services could refuse to collect sales tax on the price it allocated for its transportation services. 969 S.W.2d at 574. Park 'N Fly provided parking for airport passengers wishing to leave their cars near the airport. In addition, Park 'N Fly would transport its customers to and from the airport via a shuttle bus. Although it charged only one price for its services, Park 'N Fly allocated 30% of its charge to its parking services and 70% to its shuttle services. The relevant statute governing sales taxes specified that "sales price" is the total amount for which a taxable item is sold without a deduction for the cost of "transportation incident to the performance of a taxable service." Tex. Tax Code Ann. § 151.007(a)(4) (West 2002). In 1995, a rule was adopted clarifying that the shuttle service component would be taxable. *See* 34 Tex. Admin. Code § 3.315 (2006). This Court ultimately concluded that the phrase "incident to," as it is used in subsection 151.007(a)(4) of the tax code, means "closely related to" and that the Comptroller's rule was, therefore, consistent with the governing statute. *Park 'N Fly*, 969 S.W.2d at 575.

11

DuPont's reliance on this case is misplaced for several reasons. First, the tax statute and administrative rules at issue in *Park 'N Fly* are inapplicable to the present case. Further, in *Park 'N Fly*, we were asked to interpret the phrase "incident to," not "incidental to." In making our ultimate determination that the Comptroller's rule is consistent with the governing statute, we did reference the same definitions for "incident to" and "incidental to" found in *A Dictionary of Modern Legal Usage* that were discussed previously; however, we also mentioned the fact that the two phrases have been used interchangeably. Moreover, we expressly limited our holding that the two phrases are not interchangeable to the facts and statute at issue in that case. *See id.* (incident and incidental "are not interchangeable here").

Given that the phrase "incidental to" has historically been used interchangeably with "incident to," the Comptroller's interpretation of the sale-for-resale exemption is reasonable. Rule 3.294(k)(1) prohibits the invocation of the exemption for tangible personal property if the property is leased as part of an agreement leasing real property. *See* Tex. Admin. Code § 3.294(k)(1). This interpretation comports with the definition of "incidental to" as meaning "closely related to."

Second, we note that the Comptroller's interpretation of the sale-for-resale exemption is longstanding. Because the meaning of the statute is unclear, we give serious consideration to the contemporaneous construction of the statute made by the Comptroller. *See Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.). When a statute has been given a longstanding construction by an administrative officer and the statute is re-enacted without substantial change, "the Legislature is presumed to have been familiar with that interpretation and to have adopted it." *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). The sale-for-resale exemption was first enacted in 1941. *See* Act of

12

April 28, 1941, 47th Leg., R.S., ch. 184, art. X, § 1, 1941 Tex. Gen. Laws 269, 292 (not requiring tax be levied more than once on sale of same article of merchandise). In 1981, the exemption was codified into the tax code with language nearly identical to the current version and has been amended several times since then without substantial change. *See* Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 105.006, 1981 Tex. Gen. Laws 1490, 1546; Act of July 3, 1984, 68th Leg., 2nd C.S., ch. 31, art. VII, § 7, 1984 Tex. Gen. Laws 193, 223 (adding phrase "or taxable service"); Act of May 19, 1995, 74th Leg., R.S., ch. 350, § 1, sec. 151.006, 1995 Tex. Gen. Laws 2881, 2882 (adding phrase "or in the United Mexican States"). In 1977, the Comptroller amended a prior rule specifying that tangible personal property leased in conjunction with real property is not eligible for the sale-for-resale exemption. *See* 2 Tex. Reg. 700 (1977) (amending rule 026.02.20.014) (if contract for lease of real property includes lease of tangible personal property, sales tax is due when personal property is purchased). This interpretation has remained consistent through the current interpretation of the exemption. *See* 34 Tex. Admin. Code § 3.294(k).

Third, we note that the Comptroller's rule provides a bright-line rule, which benefits both taxpayers and auditors. *See Perry Homes*, 108 S.W.3d at 448. Given the numerous possible reasons for entering into contracts involving the leasing of real and personal property and the countless combinations of real and personal property, requiring the Comptroller to determine whether the lease of the real property is subordinate to the lease of the personal property seems an overly onerous task. *See id.* (Comptroller should not be required to engage in subjective analysis of each contract to determine parties' intent with regard to payment of taxes).

For all the reasons given, we conclude that the rule does not exceed the Comptroller's rulemaking authority and, accordingly, overrule DuPont's first issue on appeal.

13

**DuPont is Not Entitled to the Sale-for-resale Exemption**

In its second issue on appeal, DuPont asserts that its purchase of the cleanroom qualified for the sale-for-resale exemption. Specifically, it contends that the purpose of forming the Center was to build a facility for the production of photomasks and that, therefore, it purchased the items necessary for the construction of the cleanroom for the "sole purpose of" leasing the cleanroom. *See* Tex. Tax Code Ann. § 151.006(2). It also argues that the lease of the cleanroom was not "incidental to" to the lease of the two buildings; on the contrary, it insists that the lease of the cleanroom was of primary importance. In support of these arguments, DuPont compares the cost of the construction of the cleanroom with the cost of the construction of the remainder of the buildings and, based on that comparison, argues that 78% of the rent due under the lease corresponded to the use of the cleanroom and 22% to use of the remainder of the buildings. It also states that it would not have constructed the two buildings had it not intended to lease the cleanroom.

We have already concluded that rule 3.294(k) is a reasonable interpretation and is consistent with the relevant portions of the tax code. The rule prohibits the invocation of the exemption if an agreement includes the lease of real property and tangible personal property. *See* Tex. Admin. Code § 3.294(k)(1). It is undisputed that the lease between DuPont and the Center included the lease of the buildings along with the cleanroom. Accordingly, DuPont was not entitled to claim a sale-for-resale exemption.[2]

Moreover, even if the rule were invalid, DuPont would not have qualified for the exemption under the tax code. Subection 151.006(2) allows an individual to claim the exemption

---

[2] In its brief, DuPont concedes that if the rule is valid on its face, DuPont loses on its claim that it is entitled to the exemption.

for the sale of "*tangible personal property* to a purchaser for the sole purpose of the purchaser's *leasing or renting it.*" Tex. Tax Code Ann. § 151.006(2) (emphasis added). DuPont did not purchase a cleanroom; on the contrary, it purchased various items that were assembled to make a cleanroom. Because it did not purchase a cleanroom for the sole purpose of subsequently leasing it, DuPont's purchase of the items necessary for the construction of the cleanroom does not qualify for the exemption.

This conclusion is also supported by language found in the first provision of section 151.006. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (when determining legislative intent, entire act, not isolated portions, must be considered). Subsection 151.006(1) allows an individual to claim the exemption for the purchase of tangible personal property acquired for the sole purpose of reselling the property "in the normal course of business *in the form or condition in which it is acquired* or *as an attachment to or integral part of other tangible personal property.*" Tex. Tax Code Ann. § 151.006(1) (emphasis added). There is no such comparable language found in subsection (2) that would allow for a claim of the sale-for-resale exemption when the item purchased for lease has been attached to or combined with other tangible personal property. When determining the meaning of a statute, we must presume that every word in the statute has been deliberately included and that exclusions from the statute were made purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied).

For all the reasons discussed, we conclude that DuPont was not entitled to the sale-for-resale exemption and overrule its second issue. *Cf. Upjohn v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied) (tax exemption claims are construed in favor of taxing authority and strictly construed against taxpayer); *see also* Op. Tex. Att'y Gen. No. WW-1435

15

(1962) (interpreting prior version of sale-for-resale exemption and concluding that purchase of items to be installed into house with intention of selling house later does not qualify for exemption because items are not later sold as personal property).

**Summary Judgment Evidence**

In its third issue on appeal, DuPont contends that the district court erred when it excluded certain evidence in response to an objection by the Comptroller. The Comptroller objected to DuPont's inclusion of the administrative law judge's proposal for decision and the Comptroller's final decision in its motion for summary judgment and objected to portions of the motion discussing the administrative hearing. Specifically, the Comptroller asserted that, because an appeal from a final decision by the Comptroller is tried de novo in the district court, *see* Tex. Tax Code Ann. § 112.054 (West 2001), the inclusion of the documents was not permitted under government code subsection 2001.173(a), which specifies that in a trial de novo

> the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision but may not admit in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court.

Tex. Gov't Code Ann. § 2001.173(a) (West 2000). The Comptroller asserted that, because there was no dispute over whether the district court had jurisdiction over the case, the evidence of the prior agency action was inadmissible. The district court sustained these objections in its judgment.

DuPont contends that the trial court erred because, in addition to its tax appeal, DuPont was also asking for a declaration from the district court that rule 3.294(k)(1) was invalid and

16

for a declaration that a legislative rider was unconstitutional. It argues that these claims are broader than the tax assessment claim and that, therefore, there is no legal basis for excluding the documents from consideration in the declaratory judgment action.

After the Comptroller objected to the inclusion of the disputed documents, DuPont made no attempt to offer the evidence for the limited purpose of consideration in its declaratory judgment action. Accordingly, DuPont may not complain about the exclusion of evidence on appeal. *See* Tex. R. Evid. 105 (party may not complain about exclusion of evidence for one purpose, even if admissible for another purpose, if party does not expressly offer evidence for its "limited, admissible purpose"); *see also* Tex. R. App. P. 33.1 (preservation of error). Moreover, DuPont has not shown how the district court's error, if any, "probably caused the rendition of an improper judgment" or "probably prevented [it] from properly presenting the case." *See* Tex. R. App. P. 44.1 (standard for reversible error in civil cases). In a declaratory judgment action regarding the validity of an administrative rule, the district court does not defer to the Comptroller's or an administrative law judge's determination of the validity of a rule; on the contrary, the district court engages in its own review of the rule and the relevant statutes to determine if the rule comports with the requirements and directives of those statutes. Therefore, the exclusion of the documents in question did not prevent DuPont from making its case or lead to an improper verdict. Accordingly, for all the reasons previously stated, we overrule this issue.

**Rider 11**

In its fourth and final issue, DuPont asserts that rider 11 to House Bill 1 of the 78th legislative session violates the Texas and federal constitutions and the tax code. *See* Act of June 1,

2003, 78th Leg., R.S., ch. 1330, art. I, 2003 Tex. Gen. Laws 5023, 5074-75. Specifically, it claims that, because the rider prevents the Comptroller from paying a tax refund of more than $250,000 without approval by the legislature, the rider is an improper enactment of general legislation within an appropriations bill in violation of article III, section 35 of the Texas Constitution. *See id.*; *see also* Tex. Const. art. III, § 35 (no bill shall contain more than one subject). Further, it argues that the rider impermissibly attempts to alter a provision of the tax code that requires the Comptroller to issue a refund if a taxpayer suit results in a determination that the money paid under protest belongs to the taxpayer. *See* Tex. Tax Code Ann. § 112.060(a) (West 2001). Finally, DuPont contends that the rider also violates the Texas and federal constitutions because it deprives DuPont of property, is an unlawful taking, denies DuPont's right of access to the remedies provided by courts by imposing an unreasonable financial barrier, and denies DuPont due process and equal protection. *See* U.S. Const. amend. XIV (Due Process Clause); Tex. Const. art. I, §§ 13 (access to courts), 17 (takings clause), 19 (due course of law).

Because we have concluded that DuPont is not entitled to a tax refund, we need not address whether rider 11 would unconstitutionally impair its ability to obtain a refund. Moreover, rider 11 applied only to appropriations occurring in the 2004-2005 biennium. This time has expired. Moreover, the current appropriation does not contain the provision requiring legislative approval for refunds over $250,000. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1369, art. I, 2005 Tex. Gen. Laws 4324, 4366-67. Accordingly, we conclude that DuPont's claim is moot and, therefore, overrule this issue on appeal.

18

**CONCLUSION**

Having overruled all of DuPont's issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed: December 20, 2006