# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-05-00426-CV

**Terry L. Dunn, Appellant**

**v.**

**M. Ann Calahan, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 199,002-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Upon consideration of appellant Terry L. Dunn's motion for rehearing, we overrule the motion; however, we withdraw our opinion and judgment dated August 28, 2007, and substitute the following in its place. Dunn appeals from the summary judgment rendered against him in his suit for tortious interference with contract and intentional infliction of emotional distress. In five issues on appeal, Dunn claims that the trial court erred in granting summary judgment for appellee M. Ann Calahan because a genuine issue of material fact existed in his tortious interference cause of action and in all of Calahan's affirmative defenses. Because we hold that Calahan conclusively negated at least one element of Dunn's cause of action, we affirm the trial court's summary judgment.

## Background

Dunn was a student at the Killeen campus of Tarleton State University ("Tarleton") working toward a degree in elementary education. In April 2000, on his way to a student teaching assignment at an elementary school, Dunn stopped at a men's bathroom facility in a public park in Killeen.[1] A man followed him into the restroom, the two had sex, and they were subsequently arrested and charged with public lewdness. Dunn pleaded no contest to the offense and was placed on deferred adjudication in August 2000.

On discovery of the arrest, Tarleton's administration placed Dunn on probation pending the outcome of the criminal charges. One of Calahan's official duties as the head of the Curriculum and Instruction Department and member of the Teacher Education Council at Tarleton was to assist in making the final decision as to whether a person was to be admitted or retained in the teacher education department.[2] Pursuant to standard procedures, Calahan recommended that Dunn be removed from public school classrooms after his arrest.

---

[1] According to a newspaper article made part of the summary judgment record, the restroom in the park was under surveillance because of numerous complaints about drug use and lewdness around children. Calahan's reference to this article forms the basis of Dunn's complaint against her.

[2] During her deposition, Calahan was asked the following:

Q.  Are you involved in the selection process of which particular students are admitted into the education program?

A.  I serve on the Admissions Committee, yes, and I also serve on the Teacher Education Council as a representative of the department who makes the final decision as to whether or not that person is admitted into the Tarleton Teacher Education Program.

In a series of letters from September to November 2000, the Dean of Education, Joe Gillespie, agreed that Tarleton would provide a "deficiency plan" by which Dunn could obtain his teacher certification if he secured employment with a school district or private school as long as two requirements were met: (1) Dunn must make "full disclosure" about his arrest to his prospective employer, and (2) the employer must confirm in writing to Tarleton that Dunn had "fully disclosed" his arrest.

In mid-July 2001, Dunn applied for a fourth grade teaching position in the Temple Independent School District ("TISD"). He was interviewed by Gail Leidy, an elementary school principal in the TISD. TISD expressed interest in hiring him. Thereafter, Dunn provided Susan Brown, TISD's director of human resources, a disk containing a letter that he had written requesting a deficiency plan from Tarleton's Dean of Education. Although Dunn authored the letter, he asked Brown to sign it and send it to Tarleton. The letter, which was addressed to Gillespie, requested a deficiency plan and stated that Dunn was to teach math to fourth graders at Raye-Allen Elementary School. However, Brown stated that she was not comfortable with the second sentence of the letter, which stated, "Mr. Dunn has been totally forthcoming about his arrest record and has provided all documentation related to his arrest." Brown further stated that she did not feel that Dunn "had been totally forthcoming about his arrest records and provided all documentation related to his arrest." She testified that she understood the term "full disclosure" to mean "what he was arrested for, what he was charged for, the nature of the arrest, everything that was involved," and that she did not feel that Dunn had provided full disclosure of his arrest. Although Dunn had

3

disclosed the fact of his arrest to Leidy, he simply said that it was for "public lewdness" without further explanation.[3]

Because the letter that Dunn had prepared for her signature "raise[d] flags" of concern, Brown placed a reference-check call to the Copperas Cove School District Human Resources Director, who informed her about a newspaper article related to Dunn's arrest. Brown had her assistant find this article from the Web site of the Killeen newspaper and print a copy of it.

After obtaining a copy of the article, Brown initiated contact with Tarleton administrators for the purpose of making further reference checks. When she was unable to contact Gillespie, who was on vacation, Brown was referred to Calahan. Calahan recalled Brown asking, "How do I know that what [Dunn] told me is what really happened? . . . How do I know if it was full disclosure?" In response, Calahan referred to the existence of a newspaper article discussing the arrest—the same article that Brown already possessed as a result of her conversation with the human resources director in Copperas Cove. Calahan testified that she told Brown about the newspaper article so that TISD would have the information and not be "blindsided" if a parent were to inquire about whether TISD knew that Dunn's arrest had been reported in the newspaper. Calahan denied having read the article and denied using the word "solicitation" during her conversation with Brown.

TISD also conducted a routine criminal background check on Dunn, which showed that he had received deferred adjudication for public lewdness. Dunn, however, had answered "No"

---

[3] Similarly, Leidy testified that she had assumed that Dunn meant he had been caught doing something like urinating on the side of a building, or perhaps "gyrating" in public where people could see.

to a question on his application that asked if he had "ever been convicted of a felony or offenses involving moral turpitude and/or received probation or deferred adjudication." Although Dunn had already been assigned a classroom and placed in paid training, TISD ultimately declined to allow him to teach. Dunn then sued Calahan for tortious interference with contract and intentional infliction of emotional distress.[4]

## Discussion

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 n.4 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16). We view the evidence in favor of the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Dupont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 418 (Tex. App.—Austin 2006, pet. denied).

A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790

---

[4] Dunn also sued TISD for sex discrimination and breach of contract. TISD filed a counter-claim alleging that Dunn's suit was groundless and was brought in bad faith and for the purpose of harassment. TISD and Dunn entered an agreement to dismiss their claims against each other.

(Tex. App.—Austin 2002, pet. dism'd) (citing *Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). If the defendant establishes his right to summary judgment, the plaintiff must then raise a fact issue. *Id*. When the summary judgment does not specify the grounds on which it was granted, the nonmovant must show that each ground alleged in the motion is insufficient to support it. *Goss v. Bobby D. Assocs.*, 94 S.W.3d 65, 68 (Tex. App.—Tyler 2002, no pet.). We must affirm the summary judgment if any of the grounds asserted in the motion are meritorious. *Texas Workers' Comp. Comm'n v. Patient Advocates of Texas*, 136 S.W.3d 643, 648 (Tex. 2004).

The theory of tortious interference with business relations by a third person includes two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference with prospective contractual relations. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989); *see generally*, 13 William V. Dorsaneo III & Cecil C. Kuhne III, *Texas Litigation Guide* § 205.01[1] (2007). The plaintiff has the burden of proving the essential elements of tortious interference with a contract. These elements are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was the proximate cause of plaintiff's damages; and (4) actual damage or loss. *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000) (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)). The elements of tortious interference with a prospective contract are: (1) there must be a "reasonable probability" that the plaintiff would have entered into the prospective relationship or contract; (2) an "independently tortious or wrongful" act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or knew that the interference was certain

6

or substantially certain to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet denied).

In his first issue, Dunn contends that the trial court erred in granting summary judgment against him on his tortious interference with contract claim.[5] Dunn's pleadings allege only interference with an existing contract. In his pleadings he states that he:

> was notified by the Human Resources office of Defendant TISD that Susan C. Brown was authorizing Gail Liedy to hire Plaintiff as a teacher for academic year 2001-2002. Plaintiff signed a letter of commitment with Defendant TISD and in reliance upon the agreement that Plaintiff *was hired*, he gave notice and left his existing employment effective July 29, 2001."

(Emphasis added.) He also alleges that "Calahan was aware that he *had been employed* by TISD." (Emphasis added.) Because we hold that Calahan conclusively negated the elements of intentional interference and causation, we will begin by assuming that a contract existed and analyze the tort of interference with an existing contract. *See Lely Dev. Corp.*, 86 S.W.3d at 787.

Recovery under tortious interference with contract requires that the alleged interfering party must be shown to have acted willfully and intentionally. *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 670 (Tex. App.—Dallas 2004, pet. denied). A willful act involves more than

---

[5] Dunn also contended that he had a contract with Tarleton concerning the deficiency plan with which Calahan interfered. Because interference with the Tarleton contract could occur only if Calahan's actions caused TISD to refuse to employ Dunn, thus preventing the implementation of the deficiency plan, we discuss the claimed interference with the TISD contract first. At various times, Dunn refers to interference with business relationships, contract, and employment. However, the only relationships subject to interference are the contracts with TISD and with Tarleton. Appellee consistently refers to interference with contract, as will we.

7

simple participation in some act with a breaching party. *See John Paul Mitchell Sys.*, 17 S.W.3d at 730. The defendant must knowingly induce one of the contracting parties to breach its obligations. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993); *John Paul Mitchell Sys.*, 17 S.W.3d at 730 (citing *Davis v. HydPro, Inc.*, 832 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied). There must be some act interfering with a contract or act persuading a party to a contract to breach; for example, offering better terms or other incentives. *Davis* , 839 S.W.2d at 139. Liability for intentional interference may not be based on a simple finding that the defendant performed certain acts; there must be a finding that the defendant performed certain acts with the knowledge or belief that interference with a contract would result from that contract. *See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

The act at issue in this case is the telephone conversation between Brown and Calahan during which Calahan mentioned the newspaper article. Dunn alleges in his petition that Calahan "made it clear that she believed that hiring or retaining Plaintiff as a TISD teacher would embarrass both TISD and Tarleton." For evidentiary support, he refers to Brown's deposition. In Brown's deposition, she said that Calahan referred to the newspaper article as giving the arrest date. She stated that Calahan did not read her the article or provide her a copy. In fact, Brown testified that she already possessed a copy of the article at the time she and Calahan spoke on the phone. This is the entirety of the evidence on which Dunn relies to support his assertion that Calahan advised TISD that hiring Dunn would create problems; he refers to no other evidence that Calahan expressed any opinion to Brown, the only TISD administrator with whom she had contact, concerning

8

Dunn's employment with TISD, and our review of the record finds no other evidence.[6]  In Calahan's deposition, she said that she responded to Brown's question about Dunn because she thought that Brown should have the information to "avoid being blindsided" by a parent who might have seen the article.  Calahan herself had not read the contents of the article at that time.  She had no previous relationship with Brown.  The record does not show any further contact with Brown or any other TISD administrator to whom she could have communicated a negative recommendation about Dunn.

Based on the evidence in the record, no reasonable fact finder could have concluded that Calahan performed an act intended to knowingly induce TISD to breach its contract with Dunn, *see John Paul Mitchell Sys.*, 17 S.W.3d at 730, or that the conversation with Brown was done with the knowledge or belief that it would interfere with the Brown's TISD contract, *see Southwestern Bell*, 843 S.W.2d at 472.  Accordingly, Calahan conclusively negated the element of tortious interference that requires a willful and intentional act.  *See John Paul Mitchell Sys.*, 17 S.W.3d at 730.  It then became Dunn's burden to raise a fact issue.  *See Lely Dev. Corp.*, 86 S.W.3d at 790.  Dunn produced no countervailing evidence that Calahan offered TISD some inducement to breach its contract with Dunn or that her reference to a newspaper article that TISD already had served as a "negative inducement" for TISD to breach the contract.  Calahan

_____

[6] Dunn asserts that Calahan was motivated to interfere with his contract because she personally did not think that Dunn should teach.  At a deposition, when asked whether in her professional opinion Dunn should be a teacher, she said that he should not.  However, at the time of the phone call, Calahan did not know all of the details about the arrest nor did she express an opinion to Brown concerning Dunn's employment.  By the time of the deposition, Calahan learned more details and formed this professional opinion. At one point, Dunn even admitted that Calahan was not acting maliciously but in the best interests of Tarleton and the teacher education program.

9

demonstrated her entitlement to summary judgment, and Dunn failed to meet his burden to raise a fact issue. *See id.*

Calahan also conclusively negated the element of causation. Causation in a tortious interference case is "but for" causation; the test in whether the act was a substantial factor in causing the injury "without which the harm would not have occurred." *See COC Servs.*, 150 S.W.3d at 679. The factors given by TISD as the cause of the decision not to allow Dunn to teach were that he did not "fully disclose" his arrest to TISD and that he lied on his application when he said "No" in response to the question concerning deferred adjudication.[7] Dunn's pleadings allege that Calahan's interference caused the loss of his job and the associated lost wages and benefits. Dunn's brief addresses the element of causation in a single sentence: "But for Calahan's interference, Dunn would have retained his position with TISD and Calahan's actions caused TISD [sic] actions. *Victoria Bank & Trust v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991)." In his discussion of this element, Dunn provides no specific record references that would show any causative factors for his injury other than those enunciated by TISD, nor do we find such evidence in the record. Based on this record, no reasonable factfinder could conclude that Calahan's actions were a substantial factor in causing damages to Dunn. Because Calahan conclusively negated the causation element of tortious interference, *see COC Servs., Ltd.*, 150 S.W.3d at 679, the burden shifted to Dunn to raise

---

[7] We note that Dunn argues that he raised material fact issues concerning the scope of "full disclosure" of his arrest, i.e., whether he had to disclose more information than merely the offense for which he was arrested, and that the question concerning deferred adjudication could be interpreted as referring only to deferred adjudication for felonies and offense involving moral turpitude. However, the basis of his claim against Calahan is the one phone conversation and reference to the newspaper article, neither of which are affected by these arguments.

a fact issue, *see Lely Dev. Corp.*, 86 S.W.3d at 790. He did not do so. Accordingly, Calahan was entitled to summary judgment against Dunn because she negated the existence of at least one element of plaintiff's cause of action. *See id.*

We have accepted Dunn's characterization of the contract as existing.[8] Even if we were to consider Dunn's cause of action as that for interference with prospective business relations, Calahan would still prevail by negating the elements that the defendant's conduct was independently tortious or wrongful and that the plaintiff's damage was the result of defendant's act. *Johnson*, 188 S.W.3d at 304. An "independently tortious act" does not mean that plaintiff must be able to prove an independent tort; the plaintiff must prove that defendant's conduct would be actionable under a recognized tort. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Calahan and Brown produced evidence that their phone call simply involved a response by Calahan to Brown's question about how to verify the details of Dunn's offense; Calahan mentioned to Brown a newspaper article about which Brown already knew. There is no actionable tort present or assertion made that the conversation was defamatory or fraudulent.[9] A reasonable factfinder could not conclude that Calahan committed a tortious act in her phone call. The causation element also fails for the same reasons as previously discussed. There was no evidence that

---

[8] In other words, contrary to Dunn's position, a fact issue about whether the contract was existing or prospective may exist. Summary judgment is nevertheless proper because of the negation of other elements.

[9] Dunn asserts that the "full disclosure" required by his "contract" for the deficiency plan did not specify that he had to disclose this newspaper article. He seems to have interpreted the absence of specific language about the newspaper article as a prohibition against Calahan disclosing its existence. However, nowhere in the correspondence between Dunn and Tarleton concerning the deficiency plan is there any discussion of non-disclosure of any information.

Calahan's acts caused damage to Dunn and no evidence that the cause of TISD's non-retention of Dunn was based on any reasons other than those stated by the district, which were not related to the conversation between Brown and Calahan.

Dunn also claimed that Calahan interfered with his contract with Tarleton by preventing the deficiency plan from being implemented. However, the implementation of the deficiency plan depended on Dunn's securing employment. We have held that Calahan's actions did not interference with Dunn's contract; TISD's decision was not based on Calahan's actions. Accordingly, Calahan did not cause the termination of the deficiency plan by preventing his employment.

**Conclusion**

We hold that Calahan has conclusively negated one or more elements of Dunn's cause of action for tortious interference and, thus, was entitled to summary judgment. *See Lely Dev. Co.*, 86 S.W.3d at 790. Accordingly, we overrule Dunn's first issue. Because we have held that Calahan was entitled to summary judgment as a defendant who conclusively negated one or more elements of the plaintiff's claim, we will not address Dunn's issues concerning Calahan's affirmative defenses because they are not necessary to resolve this case. *See* Tex. R. App. P. 47.1 (opinion to be as brief

12

as practicable while addressing all issues necessary to disposition of claim).[10] We affirm the trial court's summary judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed on Motion for Rehearing

Filed: December 17, 2008

_____

[10] Calahan also moved for summary judgment on Dunn's claim of intentional infliction of emotional distress. Dunn brings no issue or argument on appeal concerning the summary judgment against him on that claim and so waived appeal of that claim. *See* Tex. R. App. P. 38.1(e). Further, Calahan's action in disclosing the newspaper article does not rise to the level of "extreme and outrageous" conduct that this tort requires. *See Twyman v. Tywman,* 855 S.W.2d 619, 621 (Tex. 1993). Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citing Restatement (Second) of Torts § 46, cmt. d.).

13