TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00426-CV






Terry L. Dunn, Appellant



v.



M. Ann Calahan, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 199,002-B, HONORABLE RICK MORRIS, JUDGE PRESIDING 






M E M O R A N D U M O P I N I O N



 Terry L. Dunn appeals from the summary judgment rendered against him in his
suit for tortious interference with contract and intentional infliction of emotional distress. In five
issues on appeal, Dunn claims that the trial court erred in granting summary judgment for appellee
Dr. M. Ann Calahan because a genuine issue of material fact existed in his tortious interference
cause of action and in all of Calahan's affirmative defenses. Because we hold that Calahan
conclusively negated at least one element of Dunn's cause of action, we affirm the trial court's
summary judgment.


Background


 Dunn was a student at the Killeen campus of Tarleton State University (Tarleton)
working toward a degree in elementary education. In April 2000, on his way to a student teaching
assignment at an elementary school, Dunn stopped at a men's bathroom facility in a public park in
Killeen. (1) A man followed him into the rest room, the two had sex, and they were subsequently
arrested and charged with public lewdness. Dunn pleaded no contest to the offense and was placed
on deferred adjudication in August 2000.

 On discovery of the arrest, Tarleton's administration had placed Dunn on probation
pending the outcome of the criminal charges. One of Calahan's official duties as the head of the 
the Curriculum and Instruction Department at Tarleton was to decide whether a person was to be
admitted or retained in the teacher education department. Pursuant to standard procedures, Calahan
recommended that Dunn be removed from public school classrooms after his conviction. In a series
of letters from September to November 2000, the Dean of Education, Joe Gillespie, agreed that
Tarleton would provide a "deficiency plan" by which Dunn could obtain his teacher certification if
he secured employment with a school district or private school as long as he met two requirements: 
(1) make "full disclosure" about his arrest to his prospective employer, and (2) the employer
confirmed in writing to Tarleton that Dunn had fully disclosed his arrest.

 In mid-July 2001, Dunn applied for a fourth grade teaching position in the Temple
Independent School District (TISD). He was interviewed by Gail Leidy, an elementary school
principal in the TISD. TISD expressed interest in hiring him. Dunn gave Susan Brown, the director
of human resources, a letter for her to send on TISD's behalf requesting a deficiency plan from
Tarleton. However, Brown was disturbed because the letter requesting the deficiency plan also
stated that "Mr. Dunn has been totally forthcoming about his arrest record." As part of a reference
check, Brown called the Copperas Cove school district and was informed about a newspaper article
related to plaintiff's arrest. Brown had her assistant find this article; this was the same article to
which Calahan later referred. As part of her follow-up reference check, Brown also called Gillespie,
and was referred to Calahan. Brown asked Calahan how she, Brown, could know "that what he told
me is what really happened." Calahan referred to the existence of an article in the Temple
newspaper discussing the arrest; this was the same article that Brown already possessed. Calahan
said that she told Brown about the newspaper article so that TISD would not be "blindsided" if a
resident of TISD had seen the article in the paper. Calahan had not yet read the article.

 Brown said that she did not feel comfortable that Dunn "had been totally forthcoming
about his arrest records and provided all documentation related to his arrest." Although Dunn had
disclosed his arrest to Leidy, he simply said that it was for "public lewdness" without detail. Leidy
said that she assumed that Dunn meant he had been caught doing something like urinating on the
side of a building, or perhaps "gyrating" in public where people could see. (2) The routine criminal
background check showed that appellant had received deferred adjudication for public lewdness. 
Dunn, however, had answered "No" to a question on his application that asked if he had "ever been
convicted of a felony or offenses involving moral turpitude and/or received probation or deferred
adjudication." Although Dunn had already been assigned a classroom and placed in paid training,
TISD ultimately declined to allow him to teach. Dunn then sued Calahan for tortious interference
with contract and intentional infliction of emotional distress. (3)


Discussion



 We review the district court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues
of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
Shell Oil Co. v. Khan, 138 S.W.3d 288, 291 n.4 (Tex. 2004) (citing Knott, 128 S.W.3d at 215-16). 
We construe the evidence in favor of the nonmovant and indulge every reasonable inference and
resolve any doubts in the nonmovant's favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Dupont Photomasks, Inc. v. Strayhorn, 219 S.W.3d 414, 418 (Tex. App.--Austin
2006, pet. denied).

 A defendant seeking summary judgment must negate as a matter of law at least
one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law
each element of an affirmative defense. Missouri Pac. R.R. v. Lely Dev. Corp., 86 S.W.3d 787, 790
(Tex. App.--Austin 2002, pet. dism'd) (citing Centeq Realty v. Siegler, 899 S.W.2d 195, 197
(Tex. 1995)). If the defendant establishes its right to summary judgment the plaintiff must then raise
a fact issue. Id. When the summary judgment does not specify the grounds on which it was granted,
the non-movant (as appellant) must show that each ground alleged in the motion is insufficient to
support it. Goss v. Bobby D. Assocs., 94 S.W.3d 65, 68 (Tex. App.--Tyler 2002, no pet.). We must
affirm the summary judgment if any of the grounds asserted in the motion are meritorious. Texas
Workers' Comp. Comm'n v. Patient Advocates of Texas, 136 S.W.3d 643, 648 (Tex. 2004).

 The theory of tortious interference with business relations by a third person includes
two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference
with prospective contractual relations. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689
(Tex. 1989); see generally, 13 William V. Dorsaneo III & Cecil C. Kuhne III, Texas Litigation Guide
§ 205.01[1] (2007). Plaintiff has the burden of proving the essential elements of tortious interference
with a contract. These elements are: (1) the existence of a contract subject to interference; (2) a
willful and intentional act of interference; (3) the act was the proximate cause of plaintiff's damages;
and (4) actual damage or loss. John Paul Mitchell Sys. v. Randalls Food Markets, Inc., 17 S.W.3d
721, 730 (Tex. App.--Austin 2000) (citing Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 210
(Tex. 1996)). The elements of tortious interference with a prospective contract are: (1) there must
be a "reasonable probability" that the plaintiff would have entered into the prospective relationship
or contract; (2) an "independently tortious or wrongful" act by the defendant that prevented the
relationship from occurring; (3) the defendant did such act with a conscious desire to prevent
the relationship from occurring, or knew that the interference was certain or substantially certain
to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage
as a result of the defendant's interference. Johnson v. Baylor University, 188 S.W.3d 296, 304
(Tex. App.--Waco 2006, pet denied).

 In his first issue, Dunn contends that the trial court erred in granting summary
judgment against him on his tortious interference with contract claim. (4) Dunn's pleadings allege only
interference with an existing contract. In his pleadings he states that he:


was notified by the Human Resources office of Defendant TISD that Susan C. Brown
was authorizing Gail Liedy to hire Plaintiff as a teacher for academic year 2001-2002. 
Plaintiff signed a letter of commitment with Defendant TISD and in reliance upon
the agreement that Plaintiff was hired, he gave notice and left his existing
employment effective July 29, 2001."



(Emphasis added.) He also alleges that "Calahan was aware that he had been employed by TISD."
(Emphasis added.) Because we will hold that Calahan conclusively negated the elements of
intentional interference and causation, we will begin by assuming that a contract existed, and analyze
the tort of interference with an existing contract. See Lely Dev. Corp., 86 S.W.3d at 787.

 Recovery under tortious interference with contract requires that the alleged interfering
party must be shown to have acted willfully and intentionally. COC Servs., Ltd. v. CompUSA, Inc.,
150 S.W.3d 654, 670 (Tex. App.--Dallas 2004, pet. denied). A willful act involves more than
simple participation in some act with a breaching party. See John Paul Mitchell Sys., 17 S.W.3d
at 730. The defendant must knowingly induce one of the contracting parties to breach its obligations. 
Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927 (Tex. 1993); John Paul Mitchell Sys.,
17 S.W.3d at 730 (citing Davis v. HydPro, Inc., 832 S.W.2d 137, 139 (Tex. App.--Eastland 1992,
writ denied). There must be some act interfering with a contract or act persuading a party to a
contract to breach; for example, offering better terms or other incentives. Davis v. HydPro, Inc.,
839 S.W.2d 137, 139 (Tex. App.--Eastland 1992, writ denied). Liability for intentional interference
may not be based on a simple finding that the defendant performed certain acts; there must be a
finding that the defendant performed certain acts with the knowledge or belief that interference with
a contract would result from that contract. See Southwestern Bell Tel. Co. v. John Carlo Texas,
843 S.W.2d 470, 472 (Tex. 1992).

 The act at issue in this case is the telephone conversation between Brown and Calahan
in which Calahan informed Brown about the newspaper article. Dunn alleges in his petition that
Calahan "made it clear that she believed that hiring or retaining Plaintiff as a TISD teacher would
embarrass both TISD and Tarleton." For evidentiary support, he refers to Brown's deposition. In
Brown's deposition she said that Dr. Calahan referred to the newspaper article as giving the arrest
date. Calahan did not read the article to Brown nor send her a copy. This is the totality of the
evidence on which Dunn relies to support his assertion that Calahan advised TISD that hiring Dunn
would create problems. Dunn refers to no other evidence that Calahan expressed any opinion to
Brown, the only TISD administrator with whom she had contact, concerning Dunn's employment
with TISD and our review of the record finds none. (5) In Calahan's deposition, she said that she
responded to Brown's question about Dunn because she thought that Brown should have the
information to "avoid being blindsided" by a parent who might have seen the article. She herself had
not read the contents of the article at that time. She had no previous relationship with Brown. The
record does not show any further contact with Brown or any other TISD administrator to whom she
could have communicated a negative recommendation about Dunn.

 Based on the evidence in the record, no reasonable fact finder could have concluded
that Calahan performed an act intended to knowingly induce TISD to breach its contract with Dunn,
see John Paul Mitchell Sys., 17 S.W.3d at 730, or that the conversation with Brown was done
with the knowledge or belief that it would interfere with the Brown's TISD contract. See
Southwestern Bell, 843 S.W.2d at 472. Accordingly, Calahan conclusively negated the element
of tortious interference that requires a willful and intentional act. John Paul Mitchell Sys.,
17 S.W.3d at 730. It then became Dunn's burden to raise a fact issue. Lely Dev. Corp., 86 S.W.3d
at 790. Dunn produced no countervailing evidence that Calahan offered TISD some inducement to
breach its contract with Dunn or that her reference to a newspaper article that TISD already
had served as a "negative inducement" for TISD to breach the contract. Calahan demonstrated
her entitlement to summary judgment; Dunn failed to meet his burden to raise a fact issue. See
Lely Dev., 86 S.W.3d at 790.

 Calahan also conclusively negated the element of causation. Causation in a tortious
interference case is "but for" causation; the test in whether the act was a substantial factor in causing
the injury "without which the harm would not have occurred." See COC Servs., Ltd. v. CompUSA,
Inc., 150 S.W.3d 654, 679 (Tex. App.--Dallas 2004, pet. denied). The factors given by TISD as
the cause of the decision not to allow Dunn to teach were that he did not "fully disclose" his arrest
to TISD and that he lied on his application when he said "No" in response to the question concerning
deferred adjudication. (6) Dunn's pleadings allege that Calahan's interference caused the loss of his job
and the associated wages and benefits. Dunn's brief addresses the element of causation thusly: "But
for Calahan's interference, Dunn would have retained his position with TISD and Calahan's actions
caused TISD [sic] actions. Victoria Bank & Trust v. Brady, 811 S.W.2d 931, 939 (Tex. 1991)." 
That is his sole discussion on this element and he refers to no specific reference in the record that
shows any causative factors for his injury other than those enunciated by TISD, nor do we find such
evidence in the record. Based on this record, no reasonable factfinder could conclude that Calahan's
actions were a substantial factor in causing damages to Dunn. Calahan having conclusively negated
the causation element of tortious interference, see COC Servs., Ltd., 150 S.W.3d at 679, the burden
shifted to Dunn to raise a fact issue, see Lely Dev. Corp., 86 S.W.3d at 790. He did not do so. 
Accordingly, Calahan was entitled to summary judgment against Dunn because she negated the
existence of at least one element of plaintiff's cause of action. See id.

 We have accepted Dunn's characterization of the contract as existing. (7) Even if
we were to consider Dunn's cause of action as that for interference with prospective business
relations, Calahan would still prevail by negating the elements that the defendant's conduct was
independently tortious or wrongful and that the plaintiff's damage was the result of defendant's act. 
Johnson, 188 S.W.3d at 304. An "independently tortious act" does not mean that plaintiff must
be able to prove an independent tort; the plaintiff must prove that defendant's conduct would
be actionable under a recognized tort. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726
(Tex. 2001). Calahan and Brown produced evidence that their phone call simply involved a response
by Calahan to Brown's question about how to verify the details of Dunn's offense; Calahan told
Brown about a newspaper article about which Brown already knew. There is no actionable tort
present; there is not even an assertion that the conversation was defamatory or fraudulent. (8) A
reasonable fact finder could not conclude that Calahan committed a tortious act in her phone call. 
The causation element also fails for the same reasons as previously discussed. There was no
evidence that Calahan's acts caused damage to Dunn; there is no evidence that the cause of TISD's
non-retention of Dunn was based on any reasons other than those stated by the district, which were
not based on the conversation between Brown and Calahan.

 Dunn also claimed that Calahan interfered with his contract with Tarleton by
preventing the deficiency plan from being implemented. However, the implementation of the
deficiency plan depended on Dunn's securing employment. We have held that Calahan's actions
did not interference with Dunn's contract; TISD's decision was not based on Calahan's actions. 
Accordingly, Calahan did not cause the termination of the deficiency plan by preventing
his employment.


Conclusion



 We hold that Calahan has conclusively negated one or more elements of Dunn's cause
of action for tortious interference and, thus, was entitled to summary judgment. See Lely Dev. Co.,
86 S.W.3d at 790. Accordingly, we overrule Dunn's first issue. Because we have held that Calahan
was entitled to summary judgment as a defendant who conclusively negated one or more elements
of the plaintiff's claim, we will not address Dunn's issues concerning Calahan's affirmative defenses
because they are not necessary to resolve this case. See Tex. R. App. P. 47.1 (opinion to be as brief
as practicable while addressing all issues necessary to disposition of claim). (9) We affirm the trial
court's summary judgment.


 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop


Affirmed


Filed: August 28, 2007

1. According to a newspaper article made part of the summary judgment record, the restroom in
the park was under surveillance because of numerous complaints about drug use and lewdness
around children. Calahan's reference to this article forms the basis of Dunn's complaint against her.
2. Similarly, Calahan said that she interpreted "public lewdness" to mean doing something
"inappropriate" in public like flashing or mooning. When asked if the fact that another man was in
the restroom "suggested anything to [her]" she said that it did not.
3. Dunn also sued TISD for sex discrimination and breach of contract. TISD filed a counter-claim
alleging that Dunn's suit was groundless, and was brought in bad faith and for the purpose of
harassment. TISD and Dunn entered an agreement to dismiss their claims against each other.
4. Dunn also contended that he had a contract with Tarleton concerning the deficiency plan with
which Calahan interfered. Because the interference with the Tarleton contract could occur only if
Calahan's actions caused TISD to refuse to employ Dunn, thus preventing the implementation of the
deficiency plan, we discuss the claimed interference with the TISD contract first. At various times,
Dunn refers to interference with business relationships, contract, and employment. However, the
only relationships subject to interference are the contracts with TISD and with Tarleton. Appellee
consistently refers to interference with contract, as will we.
5. Dunn asserts that Calahan was motivated to interfere with his contract because she personally
did not think that Dunn should teach. At a deposition, when asked whether in her professional
opinion Dunn should be a teacher, she said that he should not. However, at the time of the phone
call, Calahan did not know all of the details about the arrest nor did she express an opinion to Brown
concerning Dunn's employment. By the time of the deposition, Calahan learned more details and
formed this professional opinion. At one point, Dunn even admitted that Calahan was not acting
maliciously but in the best interests of Tarleton and the teacher education program.
6. We note that Dunn argues that he raised material fact issues concerning the scope of "full
disclosure" of his arrest, i.e. did he have to disclose more than "public lewdness" and that the
question concerning deferred adjudication could be interpreted as referring only to deferred
adjudication for felonies and offense involving moral turpitude. However, the basis of his claim
again Calahan is the one phone conversation and reference to the newspaper article, neither of which
are affected by these arguments.
7. In other words, contrary to Dunn's position, a fact issue about whether the contract was existing
or prospective may exist. Summary judgment is nevertheless proper because of the negation of other
elements.
8. Dunn asserts that the "full disclosure" required by his "contract" for the deficiency plan did not
specify that he had to disclose this newspaper article. He seems to have then interpreted the absence
of specific language about the newspaper article as a prohibition against Calahan disclosing its
existence. However, nowhere in the correspondence between Dunn and Tarleton concerning the
deficiency plan is there any discussion of non-disclosure of any information.
9. Calahan also moved for summary judgment on Dunn's claim of intentional infliction of
emotional distress. Dunn brings no issue or argument on appeal concerning the summary judgment
against him on that claim and so waived appeal of that claim. See Tex. R. App. P. 38.1(e). Further,
Calahan's action in disclosing the newspaper article does not rise to the level of "extreme
and outrageous" conduct that this tort requires. See Twyman v. Tywman, 855 S.W.2d 619,
621 (Tex. 1993). Extreme and outrageous conduct is conduct so outrageous in character, and so
extreme in degree, as to "go beyond all possible bounds of decency, and to be regarded as atrocious,
and utterly intolerable in a civilized community." Id. (citing Restatement (Second) of Torts § 46,
cmt. d.).